**WORLDWIDE ASSET PURCHASING, L.L.C., Atlantic Credit and Finance Special Finance Unit, L.L.C., and NCOP Capital II, L.L.C., Appellants,**

**v.**

**RENT–A–CENTER EAST, INC., Rent–A–Center West, Inc., and Rent–A–Center Texas, L.P., Appellees.**

**No. 05–08–00619–CV.**

Court of Appeals of Texas, Dallas.

July 31, 2009.

**558** ■

Thomas G. Yoxall and Kirsten M. Castaneda, Locke Lord Bissell & Liddell LLP, Dallas, for Appellant.

D. Bradley Dickinson, Dickinson & Associates, P.C., Dallas, for Appellee.

Before Justices FITZGERALD, LANG, and SMITH.[1]

**OPINION**

Opinion by Justice LANG.

This case involves disputes regarding the purchase of a portfolio of delinquent accounts arising from rental agreements (the assets) for approximately $5 million. Worldwide Asset Purchasing, L.L.C., Atlantic Credit and Finance Special Finance Unit, L.L.C., and NCOP Capital II, L.L.C., (collectively the Worldwide Purchasers) purchased the assets from Rent–A–Center East, Inc., Rent–A–Center West, Inc., and Rent–A–Center Texas, L.P. (collectively Rent–A–Center).

The Worldwide Purchasers, the plaintiffs below, appeal the portion of the trial court's final judgment that granted Rent–A–Center's, the defendants below, motions for traditional and no-evidence sum-

mary judgment, dismissing their claims and ordering that they take nothing. The Worldwide Purchasers raise five issues on appeal arguing the trial court erred when it: (1) granted Rent–A–Center's motions for traditional and no-evidence summary judgment on the Worldwide Purchasers' breach of contract claims; (2) granted Rent–A–Center's motion for traditional summary judgment on its affirmative defenses of waiver and release, dismissing the Worldwide Purchasers' claims for breach of contract, fraud, fraudulent inducement, and rescission; (3) granted traditional summary judgment on the Worldwide Purchasers' fraud and fraudulent inducement claims; (4) granted Rent–A–Center's motions for traditional and no-evidence summary judgment on NCOP's breach of contract claims because it lacked privity; and (5) granted Rent–A–Center's motions for traditional and no-evidence summary judgment as to the Worldwide Purchasers' claims for attorneys' fees. The Worldwide Purchasers do not appeal the portion of the trial court's final judgment granting Rent–A–Center's: (1) motions for summary judgment on their claims for negligent misrepresentation; and (2) motion for no-evidence summary judgment on NCOP's claims for fraud, fraudulent inducement, negligent representation, money had and received, unjust enrichment, and rescission.

In a cross-appeal, Rent–A–Center appeals the portion of the trial court's final judgment that granted Worldwide Asset's motion for summary judgment, dismissing Rent–A–Center's counterclaims against Worldwide Asset and ordering that Rent–A–Center take nothing. In six issues,

Rent–A–Center raises five points arguing the trial court erred when it granted Worldwide Asset's motion for summary judgment on its counterclaims because there was sufficient evidence: (1) Rent–A–Center performed, tendered performance, or was excused from performance under the contract; (2) Worldwide Asset breached the contract; (3) Worldwide Asset committed fraud, fraudulent inducement, and made false representations; (4) Rent–a–Center was entitled to indemnification under the contract; and (5) to support Rent–A–Center's claim of entitlement to recovery of attorneys' fees under the contract.

We conclude the trial court did not err when it granted Rent–A–Center's motion for summary judgment dismissing the Worldwide Purchasers' claims or when it granted Worldwide Asset's motion for summary judgment dismissing Rent–A–Center's counterclaims. The trial court's final judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to an agreement dated December 30, 2004, Rent–A–Center sold the assets to Worldwide Asset Purchasing, L.L.C., for $5,009,221.45. After purchasing the assets from Rent–A–Center, Worldwide Asset sold portions of those assets to Atlantic Credit and Risk Management Alternative Portfolio Services, L.L.C. Then, pursuant to a bankruptcy court order, Risk Management's portion of the assets were sold to NCOP. However, the Worldwide Purchasers contend they have been unable to make sufficient recovery of the assets and paid more than the assets were worth due to alleged misrepresentations and breaches of contract by Rent–A–Center. As a result, the Worldwide Purchasers filed suit against Rent–A–Center alleging claims for fraud, fraudulent inducement, negligent misrepresenta-tion, breach of contract, rescission of the contract, and unjust enrichment or money had and received. In its third amended answer, Rent–A–Center generally denied the allegations and asserted several affirmative defenses, including the defenses of waiver and release.

Rent–A–Center filed: (1) a motion for no-evidence summary judgment on all of NCOP's claims against it; (2) a motion for no-evidence summary judgment on the Worldwide Purchasers' claims for breach of contract; and (3) a motion for traditional summary judgment on (a) the Worldwide Purchasers' claims for fraud, fraudulent inducement, negligent misrepresentation, breach of contract, and unjust enrichment and (b) Rent–A–Center's affirmative defenses of waiver and release.

Worldwide Asset filed a motion for traditional and no-evidence summary judgment on Rent–A–Center's counterclaims. Then, Rent–A–Center filed its first amended counterclaims against Worldwide Asset, alleging breach of contract, fraud, fraudulent inducement, false representation, and indemnification, and sought attorneys' fees.

After a hearing, the trial court granted Rent–A–Center's motions for summary judgment and ordered the Worldwide Purchasers take nothing on their claims, and granted Worldwide Asset's motion for summary judgment and ordered Rent–A–Center take nothing on its counterclaims.

## II. STANDARD OF REVIEW

When the trial court does not specify the basis for its summary judgment, the appealing party must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000); *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *see also*

*Willms v. Americas Tire Co.,* 190 S.W.3d 796, 806 (Tex.App.-Dallas 2006, pet. denied). Both the no-evidence and traditional grounds for summary judgment are evaluated to determine whether the trial court was correct under any theory. *See Willms,* 190 S.W.3d at 807. When a trial court's order does not specify the grounds for its summary judgment, an appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003); *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 923 (Tex.App.-Dallas 2005, no pet.).

When both parties move for summary judgment, an appellate court reviews the summary judgment evidence presented by both parties to determine all questions presented. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656 (Tex.2005) (discussing when trial court grants one motion and denies the other); *FM Props. Operating Co.,* 22 S.W.3d at 872 (same). The summary judgment record includes evidence attached to either the motion or the response. *See Wilson v. Burford,* 904 S.W.2d 628, 629 (Tex.1995) (per curiam) (discussing Texas Rule of Civil Procedure 166a(c)). When both parties file motions for summary judgment, the appellate court considers all of the evidence accompanying both motions to determine whether either party's motion for summary judgment should have been granted. *See Howard v. INA County Mut. Ins. Co.,* 933 S.W.2d 212, 216 (Tex.App.-Dallas 1996, writ denied).

## III.  CONTRACT INTERPRETATION

The Worldwide Purchasers generally argue their issues by addressing the plain language of the contract, but contend, in the alternative, the contract is ambiguous because it is subject to two interpretations and cannot be resolved as a matter of law. This alternative position is presented for the first time on appeal without supporting argument or authority. *See* Tex.R.App. P. 38.1(i) (brief must contain clear and concise argument with appropriate citations to authority and record). Accordingly, we will interpret the contract's meaning and intent from the four corners of the document.

■ It is a basic premise of contract interpretation that unambiguous contracts are construed as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *First Union,* 168 S.W.3d at 924; *Pratt–Shaw v. Pilgrim's Pride Corp.,* 122 S.W.3d 825, 829 (Tex.App.-Dallas 2003, pet. denied). The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties. *First Union,* 168 S.W.3d at 924; *Pratt–Shaw,* 122 S.W.3d at 829. Terms are given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *First Union,* 168 S.W.3d at 924; *Pratt–Shaw,* 122 S.W.3d at 829.

■ When interpreting a contract, courts examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999); *First Union,* 168 S.W.3d at 924; *Pratt–Shaw,* 122 S.W.3d at 829. Courts presume the parties to a contract intend every clause to have some effect. *Heritage Res.,* 939 S.W.2d at 121; *First Union,* 168 S.W.3d at 924; *Pratt–Shaw,* 122 S.W.3d at 829. When interpreting a promise or agreement, specific and exact terms are given greater weight than gen-

eral language. *First Union,* 168 S.W.3d at 924; *Pratt–Shaw,* 122 S.W.3d at 829.

## IV. THE WORLDWIDE PURCHASERS' CLAIMS FOR BREACH OF CONTRACT

In issue one, the Worldwide Purchasers argue the trial court erred when it granted Rent–A–Center's motions for traditional and no-evidence summary judgment on the Worldwide Purchasers' breach of contract claims. The Worldwide Purchasers' contend their claims for breach of the contract are based on sections 8.1–8.3 and 8.5 of the contract. They argue Rent–A–Center did not establish it was entitled to summary judgment on their breach of contract claims as a matter of law and they presented evidence raising a genuine issue of material fact precluding summary judgment.

### A. Applicable Law

■■■ A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Stewart v. Sanmina Tex., L.P.,* 156 S.W.3d 198, 214 (Tex.App.-Dallas 2005, no pet.). The elements of a claim for breach of contract are: (1) existence of a valid contract; (2) performance or tentative performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damage resulting to the plaintiff from the breach. *Id.*

### B. Application of the Law to the Facts

In their second amended petition, the Worldwide Purchasers alleged Rent–A–Center's "improper and unlawful actions (described above) [i.e., fraud, fraudulent inducement, and negligent misrepresenta-

tions,] were material breaches of the [contract]." Rent–A–Center moved for traditional summary judgment on the Worldwide Purchasers' claims for breach of contract arguing those claims could not prevail, as a matter of law, because: (1) Rent–A–Center fulfilled the provisions of article II of the contract entitled "Purchase and Sale of the Assets," which required it to sell the assets, send Worldwide Asset a bill of sale and an asset schedule, and exchange unenforceable accounts with replacement accounts; and (2) they did not breach the representations in the contract.

In their response, the Worldwide Purchasers argued there was a genuine issue of material fact regarding whether Rent–A–Center breached the contract. They claimed Rent–A–Center made material misrepresentations throughout the contract and concealed material facts, breaching sections 8.1–8.3, and 8.5 of the contract.[2] As described below, the Worldwide Purchasers have offered evidence they say demonstrate particular breaches of contract and those arguments depend largely on a disputed interpretation of the meaning of the contract language.

### 1. Section 8.1 of the Contract

■■■ First, in their response to Rent–A–Center's motion for traditional summary judgment, the Worldwide Purchasers argued Rent–A–Center breached section 8.1 of the contract because the assets were determined to be "unenforceable," i.e., not collectible for various reasons after attempting collection, and Rent–A–Center lacked the requisite right to, title, and interest in the assets as represented in section 8.1.

2. Also, in their response to the motion for summary judgment, the Worldwide Purchasers argued Rent–A–Center breached sections

1.19 and 2.2 of the contract. However, they do not argue these sections were breached on appeal.

Section 8.1 contains the following language:

Section 8.1. *Authorization.* [Rent–A–Center] is the sole owner of all right, title and interest in and to the Assets, subject to any and all liens and encumbrances, and has the right to transfer [Rent–A–Center's] interest therein to [Worldwide Asset] on the terms and conditions set forth herein. [Rent–A–Center] will provide [Worldwide Asset], prior to funding by [Worldwide Asset], a letter from any respective lender releasing all liens and encumbrances related to the Assets. [Rent–A–Center] has the power to cause its senior lenders to execute and deliver a release of lien with respect to the Assets, if required. [Rent–A–Center] has all requisite power and authority to perform all of its obligations under this Agreement and to execute all instruments and other documents contemplated to be executed and delivered by [Rent–A–Center] to [Worldwide Asset] in connection herewith.

However, we cannot agree the evidence of unenforceability offered by the Worldwide Purchasers when applied to the relevant contract provisions creates a material issue of fact as to the alleged breach. Several of the provisions of the contract directly demonstrate the parties agreed any or all of the assets might "be unenforceable." Section 1.18 defines unenforceability, in part, as uncollectible.[3] Further, in article IX, section 9.3 Worldwide Asset acknowledged the enormous risk to which it may be exposed by purchasing the assets because they may be unenforceable:

Section 9.3. *Economic Risk.* [Worldwide Asset] acknowledges that the Assets may have limited or no liquidity and [Worldwide Asset] has the financial wherewithal to own the Assets for an indefinite period of time and to bear the economic risk of an outright purchase of the Assets and a total loss of the Purchase Price for the assets. [Worldwide Asset] *acknowledges that the Assets may be Unenforceable Assets.*

(Emphasis added). Also, section 8.4 contains language that clearly sets out a warranty disclaimer, an as-is provision, and a "with all faults" clause:

Section 8.4. *No Other Representations or Warranties.* EXCEPT AS PROVIDED IN SECTIONS 8.1, 8.2, and 8.3, THE ASSETS ARE BEING SOLD *"AS IS"* AND *"WITH ALL FAULTS,"* WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, AND [RENT–A–CENTER] SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE ASSETS, THE STRATIFICATION OR PACKAGING OF THE ASSETS. [RENT–A–CENTER] MAKES NO REPRESENTATION OR WARRANTY AS TO THE NUMBER OF UNENFORCEABLE ASSET(S) WHICH MAY BE INCLUDED IN THIS SALE.

(Emphasis in orig.).

Section 8.1 addresses title, not the collectibility of any asset. On this record, we are not shown how the acknowledgment of the potential unenforceability of any assets

---

**3.** Section 1.18 of the contract states, in part: Section 1.18. *"Unenforceable Asset"* means a Debt that is or may be legally unenforceable or uncollectible for one of the following reasons: [14 reasons are enumerated]. [Rent–A–Center] makes *no* representations or warranties regarding the number of Unenforceable Assets included in the Assets.

demonstrates a breach of a representation of title to that asset.

## 2. Section 8.2 of the Contract

■ Second, the Worldwide Purchasers argued Rent–A–Center breached section 8.2 of the contract because the information provided by Rent–A–Center was not true and correct in all material respects. Section 8.2 of the contract contains the following representations:

Section 8.2. *Accuracy of Asset Information.* The information with respect to the Assets provided on the Asset Schedule, including the electronic data accompanying and supporting the Asset Schedule, was prepared from [Rent–A–Center's] books and records and, to the actual knowledge of [Rent–A–Center], is true and correct in all material respects.

The Worldwide Purchasers presented summary judgment evidence which they contend demonstrates an overwhelmingly high percentage of the information on the asset schedule was inaccurate or incomplete, including customer information, references, social security numbers, inventory descriptions, inventory status, account and sales balances, as well as whether the rental agreements were valid. The Worldwide Purchasers contend without accurate or complete information they could not proceed with collection efforts for many of the assets and when Rent–A–Center provided inaccurate and incomplete information, section 8.2 of the contract was breached. They claimed the above language of section 8.2 of the contract required that: (1) the information was prepared from Rent–a–Center's books and records; and (2) to the actual knowledge of Rent–A–Center, that information was true and correct in all material respects.

The parties do not dispute the information was prepared from Rent–A–Center's books and records. Rather, they disagree about the meaning of the statement that the information contained in the asset schedule "is true and correct in all material respects." Rent–A–Center argues this statement can only be interpreted to mean the information provided as part of and in the asset schedule was true and correct as set forth in Rent–A–Center's books and records, but the Worldwide Purchasers contend the information was agreed to be current and accurate.

Rent–A–Center argues the Worldwide Purchasers' interpretation of section 8.2 is not supported by the contract language. According to Rent–A–Center, to do as the Worldwide Purchasers contend, Rent–a–Center would have been required to re-verify the account information for all 62,-000 assets purchased. Rent–A–Center argues there is nothing in the contract requiring it to re-verify the account information and it would never have agreed to do so. On the other hand, in the Worldwide Purchasers' response to Rent–A–Center's motion for summary judgment, the Worldwide Purchasers argued section 8.2 did not require the information to be 100% accurate, just true and correct in all "material" respects.

We cannot agree with the Worldwide Purchasers that section 8.2 requires Rent–A–Center to provide accurate, up to date information as to each asset. The plain meaning of the language in section 8.2 ties the representation of accuracy only to the information as it is in the books and records. After all, it is not the books and records that were directly supplied by Rent–A–Center, rather it was a summary of information from those books and records. That summary was set out in the "asset schedule" and the "electronic data accompanying" that schedule, and it was represented that the data and information was within Rent–A–Center's "actual knowledge" as set out in those books and

records that was true and correct "in all material respects." Had they agreed to current, materially accurate data as argued by the Worldwide Purchasers, they would have so stated. We decline to supply such language.

Additionally, we conclude the Worldwide Purchasers' claim that current information was required as to each asset is rendered ineffective when section 8.2 is read in conjunction with sections 8.4 and 9.3. In section 8.4, Worldwide Asset acknowledged the assets were being sold "AS–IS" and "WITH ALL FAULTS." In section 9.3, Worldwide Asset acknowledged the assets may be "unenforceable."

### 3. Section 8.3 of the Contract

■ Third, the Worldwide Purchasers argued Rent–A–Center breached section 8.3 of the contract because that section represented the information provided for conducting due diligence would be "materially the same in all respects" as the information in the asset schedule that would be provided upon closing the sale. Section 8.3 of the contract contains the following representation:

> Section 8.3. ***Due Diligence Material.*** The Assets being sold pursuant to this Agreement are materially the same in all respects as the Assets furnished to [Worldwide Asset] for purposes of conducting due diligence.

The Worldwide Purchasers presented summary judgment evidence they claim demonstrates this provision of the contract gave a "materially false impression" of the completeness and accuracy of the actual information in the asset schedule because:

> [Rent–A–Center] gave Worldwide [Asset] a Stratification Report with which to conduct its due diligence. The Stratification report [sic] represented that the Asset Schedule contained addresses for 95% of the accounts and at least one

phone number for 82% of the accounts. These representations gave [the Worldwide Purchasers] a materially false impression of the completeness and accuracy of the actual information in the Asset Schedule. In reality, the addresses and phone numbers provided by [Rent–A–Center] were overwhelmingly false, and [the Worldwide Purchasers] were unable to make initial contact with the vast majority of customers. Clearly, the due diligence materials furnished to [Worldwide Asset] were not "materially the same" as the Asset information that [the Worldwide Purchasers] actually purchased.

In support of this argument, the Worldwide Purchasers attached the affidavits of three collection facilities retained by the Worldwide Purchasers for the handling and collection of the assets. In their affidavits, these collection facilities state they were sent the electronic data provided by Rent–A–Center, a high volume of the initial collection notification letters they mailed were returned as undeliverable, and their attempts to contact many of the debtors by telephone were unsuccessful because the telephone numbers were either incorrect or had not been provided.

We disagree with the Worldwide Purchasers' contention. Section 8.3 merely represents that the assets sold pursuant to the contract are "materially" the same as the assets that were provided to Worldwide Asset for purposes of conducting due diligence. Section 8.3 addresses the "assets being sold," but does not make any representation as to the accuracy or completeness of the information.

### 4. Section 8.5 of the Contract

■ Finally, the Worldwide Purchasers argued Rent–A–Center breached section 8.5 of the contract because in that section, Rent–A–Center promised to re-

place unenforceable assets. Section 8.5 provides:

Section 8.5. ***Covenant to Replace Asset.*** [Rent–A–Center] agrees to replace an Unenforceable Asset with a Replacement Asset as hereafter set forth. [Worldwide Asset] shall, within one hundred fifty (150) days from the Transfer Date, **notify [Rent–A–Center] of each Unenforceable asset with respect to which [Worldwide Asset] seeks such replacement** and shall supply [Rent–A–Center] with evidence satisfactory to [Rent–A–Center] that same is an Unenforceable asset. [Rent–A–Center] shall be obligated to replace only those Unenforceable Assets for which notice is received within such one hundred fifty (150) day period. [Rent–A–Center] shall provide a Replacement Asset to [Worldwide Asset] within sixty (60) days from receipt of such notice from [Worldwide Asset]. [Rent–A–Center] shall not be obligated to make replacement on an Asset by Asset basis but may elect to provide such replacement on the sixtieth (60th) day, or more frequently, at [Rent–A–Center's] option. For Assets categorized as bankrupt or deceased the following shall constitute satisfactory evidence: a copy of the Death Certificate, obituary, Banko scrub notification (or other similar vendor) on their letterhead, LEXIS/NEXIS notification, court documentation, or letter from Obligor's attorney. For Assets categorized as fraud, the following shall constitute satisfactory evidence: affidavit signed by the Obligor or police report. For Assets categorized under Section 1.18(viii) as requiring documentation to prove the validity of the Debt, satisfactory evidence shall be verifiable correspondence from the Obligor. **A Replacement Asset determined to be an Unenforceable Asset shall be subject to replacement pursuant to Section 8.5.**

(Emphasis added).

The Worldwide Purchasers presented summary judgment evidence they contend demonstrates National Loan Exchange (NLEX), Rent–A–Center's agent, advised the Worldwide Purchasers that if they availed themselves of the replacement remedy in section 8.5, those efforts would have been costly and futile because the replacement assets would contain the same bad information as the original asset portfolio. Once again, we cannot agree with the Worldwide Purchasers. Section 8.5 requires Worldwide Asset to notify Rent–A–Center, not NLEX, respecting each unenforceable asset for which it seeks replacement. Further, this section requires Rent–A–Center to initially replace "unenforceable assets" as well as subsequently replacing "replacement assets" determined to be "unenforceable assets." The Worldwide Purchasers did not contend the summary judgment evidence shows Rent–A–Center refused to replace any unenforceable assets. Rather, the Worldwide Purchasers specifically stated in their response to the motion for traditional summary judgment that they did not avail themselves of the "replacement" remedy provided in section 8.5.

### 5. Conclusion

We conclude the Worldwide Purchasers did not meet their burden to raise material issues of fact and the trial court did not err when it granted Rent–A–Center's motions for summary judgment on the Worldwide Purchasers' breach of contract claims. Issue one is decided against the Worldwide Purchasers.

### V. THE WORLDWIDE PURCHASERS' CLAIMS FOR FRAUD AND FRAUDULENT INDUCEMENT

In issue three, the Worldwide Purchasers argue the trial court erred when it

granted Rent–A–Center's motion for traditional summary judgment on their fraud and fraudulent inducement claims. Rent–A–Center responds, as it did in its motion for summary judgment, the waiver-of-reliance provision in the contract precludes the Worldwide Purchasers' tort claims.

### A. Applicable Law

■ Reliance is a necessary element of fraud, fraud by nondisclosure, which is a subcategory of fraud, fraudulent inducement, and negligent misrepresentation. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179, 181 (Tex. 1997); *Marcontell v. Jacoby*, 260 S.W.3d 686, 691 (Tex.App.-Dallas 2008, no pet.). A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment. *Marcontell*, 260 S.W.3d at 691.

■ "[A] disclaimer of reliance on representations, 'where the parties' intent is clear and specific, should be effective to negate the element of reliance.'" *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex.2008) (quoting *Schlumberger*, 959 S.W.2d at 179). "[P]arties who contractually promise not to rely on extra-contractual statements—*more than that, promise that they have in fact not relied upon such statements*—should be held to their word." *Forest Oil*, 268 S.W.3d at 60 (emphasis in orig.). When knowledgeable parties expressly discuss material issues during contract negotiations, but nevertheless elect to include a waiver-of-reliance provision, courts will generally uphold the contract. *See id.* at 58. An all-embracing disclaimer of any and all representations shows the parties' clear intent. *Id.* However, "facts may exist where the disclaimer lacks 'the requisite clear and unequivocal expression of intent necessary to disclaim reliance' on the specific representations at issue." *Id.*

at 60 (quoting *Schlumberger*, 959 S.W.2d at 181). As a result, when determining whether a waiver-of-reliance provision is binding, courts must always examine the contract itself and the totality of the surrounding circumstances, including whether: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties discussed the issue which has become the topic of the dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear. *See Forest Oil*, 268 S.W.3d at 60. "If disclaimers of reliance cannot ensure finality and preclude post-deal claims for fraudulent inducement, then freedom of contract, even among the most knowledgeable parties[, who were] advised by the most knowledgeable legal counsel, is grievously impaired." *Id.* at 61.

### B. Application of the Law to the Facts

■ In their second amended petition, the Worldwide Purchasers alleged Rent–A–Center made material, false representations or non-disclosures about the character, quality, and collection history of the assets sold pursuant to the contact. They asserted claims for fraud and fraudulent inducement alleging Rent–A–Center knowingly or recklessly made these false representations or non-disclosures so the Worldwide Purchasers would pay more for the assets than the assets were worth, they would not have purchased the assets if they had known Rent–A–Center's representations were not true, they relied on Rent–A–Center's false representations or non-disclosures, and they sustained substantial injuries and damages as a result.

Rent–A–Center moved for traditional summary judgment on the Worldwide Purchasers' claims for fraud and fraudulent inducement, claiming, in part, the Worldwide Purchasers could not establish, as a matter of law, the element of reliance because section 9.1 of the contract contains a specific, no-reliance provision. The Worldwide Purchasers responded that Rent–A–Center's fraud invalidated all cautionary language, including the "as is," "with all faults," "waiver-of-reliance," and "merger" clauses.

In their response to Rent–A–Center's motion for traditional summary judgment, the Worldwide Purchasers argued the "*Schlumberger* exception" does not apply as a matter of law. The Worldwide Purchasers recognized the Texas Supreme Court's ruling in *Schlumberger* that a disclaimer of reliance negates the element of reliance. However, the Worldwide Purchasers contend *Warehouse Associates Corporate Centre II v. Celotex Corp.* and *Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.,* demonstrate *Schlumberger* provides only a narrow exception that applies when the parties are seeking to terminate a business relationship and resolve a long-running dispute. *See Warehouse Assocs. Corp. Ctr. II v. Celotex Corp.,* 192 S.W.3d 225, 234 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (discussing as-is clause and waiver-of-reliance provision); *Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.,* 134 S.W.3d 385, 394 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd) (discussing warranty disclaimer). Accordingly, the Worldwide Purchasers assert *Schlumberger* does not apply to the beginning of a business relationship as in the instant case.

The Texas Supreme Court's opinion in *Forest Oil* issued subsequent to *Warehouse Associates* and *Carousel's Creamery* clarifies to some extent the business rela-tionships in which the *Schlumberger* rule applies. The Texas Supreme Court commented that although it noted in *Schlumberger* the company's representations about the project's value and feasibility led to "the very dispute that the release was supposed to resolve," the reasoning in *Schlumberger* applied "broadly to contracts generally." *Forest Oil,* 268 S.W.3d at 58 n. 25. Also, the Texas Supreme Court clarified its statement in *Schlumberger* that a disclaimer of reliance "will not always bar a fraudulent inducement claim" by explaining this statement merely acknowledges facts may exist demonstrating the disclaimer lacks the requisite clear and unequivocal expression of intent necessary to disclaim reliance on the specific representations at issue. *Id.* at 60. In addition, specifically identifying, *inter alia, Warehouse Associates,* the Texas Supreme Court noted the courts of appeals disagree over which *Schlumberger* facts were most relevant. *Id.* at 60 & n. 32. Accordingly, the Texas Supreme Court clarified further by identifying the facts that guided its reasoning and listed the following factors: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear. *Id.* at 60.

We review the contract and summary judgment evidence to see whether the waiver-of-reliance clause is supported by the factors set forth in *Schlumberger* and *Forest Oil.* First, we address the extent of negotiations of the contract terms. During his deposition, Lundeberg, Worldwide Asset's corporate representative, stated the contract was a negotiated contract,

Worldwide Asset reviewed it, and made changes to it. Also, Lundeberg stated he or Worldwide Asset's counsel developed a list of proposed changes to the contract and some of those changes were ultimately agreed to by Rent–A–Center. Dawn Wolverton, vice president and associate general counsel for Rent–A–Center, stated in her deposition she reviewed the contract. Further, she stated that she did not want to include in the contract a number of the "statements" made by Rent–A–Center in its advertisement distributed to offer the assets for sale. She said she did not want those "statements" to be "legally binding." According to Wolverton, those "statements" are not included in the final, signed contract. Also, in her affidavit, Wolverton stated Worldwide Asset's representation in section 9.1 of the contract that Worldwide Asset conducted its own due diligence and was not relying on any oral or written information provided by Rent–A–Center and NLEX was "fundamental" to the transaction and if Worldwide Asset had refused to agree to the inclusion of section 9.1 in the contract, Rent–A–Center would not have agreed to sell the assets to Worldwide Asset.

Second, as to whether Worldwide Asset was represented by counsel, Lundeberg stated in his deposition testimony Worldwide Asset's in-house counsel reviewed the contract. However, he could not recall whether outside counsel did so as well.

Third, as to arm's length dealing, the parties do not dispute and the summary judgment evidence demonstrates the contract between Rent–A–Center and Worldwide Asset was an arm's-length transaction.

Fourth, respecting the knowledge of the parties in business matters, on this record, it is not disputed that Rent–A–Center and Worldwide Asset are knowledgeable in business matters. Rent–A–Center is the largest rent-to-own company in the United States, Canada, and Puerto Rico where it operates approximately 3,100 stores. Worldwide Asset is among the nation's five largest publically held debt-buying companies managing several million assets and billions of dollars of receivables. Also, Lundeberg stated Worldwide Asset was knowledgeable in the acquisition of purchase receivables and experienced in the purchasing of receivable debts.

Finally, we review whether the pertinent contract provision is clear. We note the article in which section 9.1 is contained is titled "Article IX [Worldwide Asset's] Evaluation and Acceptance of Risk of Assets Sold 'As-is.'" Further, the following is the pertinent waiver-of-reliance provision addressed by the parties:

Section 9.1. *Independent Evaluation.* [Worldwide Asset's] bid for and decision to purchase the Assets pursuant to this Agreement is and was based upon [Worldwide Asset's] own independent evaluation of information deemed relevant to [Worldwide Asset], including, but not limited to, the information made available by [Rent–A–Center] or [NLEX] to all potential bidders for the Assets, and [Worldwide Asset's] independent evaluation of related information. [Worldwide Asset] acknowledges and agrees that, while some information concerning the Assets was made available to [Worldwide Asset] for review prior to the Sale, such information, through no fault of [Rent–A–Center] may not be complete. If [Rent–A–Center], an asset servicer, servicing agent or any of [Rent–A–Center's] contractors or employees failed to deliver to [Worldwide Asset] or [NLEX] any or all of the Asset information in such servicer's or employee's possession, then neither [Rent–A–Center] not [NLEX] or shall be liable for the failure to include such

Asset information in the materials made available for review by prospective bidders prior to the Sale. **[Worldwide Asset] has relied solely on its own investigation and it has not relied upon any oral or written information provided by [Rent–A–Center] and/or [NLEX] or its personnel or agents and acknowledges that no employee or representative of [Rent–A–Center] and/or [NLEX] has been authorized to make, and that [Worldwide Asset] has not relied upon, any written statements other than those specifically contained in this Agreement.**

(Emphasis added). The parties have not asserted specifically that the above language is ambiguous, or otherwise unclear. We conclude the waiver-of-reliance provision, by its plain language, demonstrates a clear and unequivocal expression of the parties' intent to disclaim reliance. Therefore, Rent–A–Center has conclusively negated, as a matter of law, the element of reliance.

We conclude the trial court did not err when it granted Rent–A–Center's motion for summary judgment as to the Worldwide Purchasers' claims for fraud and fraudulent inducement. Issue three is decided against the Worldwide Purchasers. Based on our resolution of issues one and three, we need not address the Worldwide Purchasers' remaining issues.

## VI. RENT–A–CENTER'S BREACH OF CONTRACT COUNTERCLAIMS

In cross-issues two and three, Rent–A–Center argues the trial court erred when it granted Worldwide Asset's motion for no-evidence summary judgment on its breach of contract counterclaims because: (1) Rent–A–Center performed, tendered performance, or was excused from perform-

ance under the contract; and (2) Worldwide Asset breached articles VI, VII, IX, and XVI of the contract. Worldwide Asset responds that Rent–A–Center cannot establish it complied with its own contractual obligations and there is no evidence Worldwide Asset breached the contract.

### A. Applicable Law

When more than one ground is asserted in a motion for summary judgment and the trial court does not specify the grounds on which it rendered summary judgment, an appellant must challenge each ground asserted. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970); *Murphy v. Gruber*, 241 S.W.3d 689, 700 (Tex.App.-Dallas 2007, pet. denied). If an appellant fails to challenge one of the grounds for summary judgment, an appellate court may affirm the summary judgment on that ground alone. *Murphy*, 241 S.W.3d at 700.

### B. Application of the Law to the Facts

In its first amended counterclaims, Rent–A–Center asserted a claim against Worldwide Asset for breach of contract based on three theories and alleged it was "damaged, including damages as a result of having to retain attorneys to defend and prosecute this action, and in all likelihood will continue to sustain significant foreseeable damages." Worldwide Asset moved for no-evidence summary judgment, in part, on Rent–A–Center's breach of contract counterclaims, arguing there was no evidence to support the element of damages. In its response, Rent–A–Center referenced, in passing and without pointing to any summary judgment evidence, reputation damages.[4]

---

4. Specifically, Rent–A–Center stated "Worldwide [Asset's] false representations have dam-

aged [Rent-a-Center's] reputation and ability to enter into future rental agreements with

On appeal, Rent–A–Center argues only that the trial court erred when it granted Worldwide Asset's motion for summary judgment on its breach of contract counterclaims because: (1) Rent–A–Center performed, tendered performance, or was excused from performance under the contract; and (2) Worldwide Asset breached articles VI, VII, IX, and XVI of the contract. Although the record shows Worldwide Asset moved for no-evidence summary judgment, in part, on the basis that there was no evidence to support the element of damages, Rent–A–Center does not challenge this ground supporting summary judgment on appeal. *See Murphy,* 241 S.W.3d at 700. Accordingly, we conclude the trial court did not err when it granted no-evidence summary judgment on Rent–A–Center's breach of contract counterclaims.

Cross-issues two and three are decided against Rent–A–Center.

## VII. RENT–A–CENTER'S FRAUD, FRAUDULENT INDUCEMENT, AND FALSE REPRESENTATION COUNTERCLAIMS

In cross-issue four, Rent–A–Center argues, in part, the trial court erred when it granted Worldwide Asset's motion for no-evidence summary judgment on its counterclaims for fraud, fraudulent inducement, and false representation because Rent–A–Center was "damaged by the commencement of this litigation in that it has had to retain and compensate attorneys to defend this action." The sole damages claimed by Rent–A–Center are attorneys' fees incurred in the course of defending the Worldwide Purchasers' lawsuit.

### A. Applicable Law

■■■■■ Texas law distinguishes between recovery of attorneys' fees as actual damages and recovery of attorneys' fees incident to recovery of other actual damages. *Haden v. Sacks,* 222 S.W.3d 580, 597 (Tex.App.-Houston [1st Dist.] 2007) (opin. on reh'g), *reversed, in part, on other grounds by* 263 S.W.3d 919 (Tex.2008) (per curiam). A party may recover attorneys' fees only as provided by statute or by contract. *See Gulf States Util. Co. v. Low,* 79 S.W.3d 561, 567 (Tex.2002); *Haden,* 222 S.W.3d at 597; *see e.g.,* Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 2008). A party is not entitled to attorneys' fees incident to recovery unless the party independently recovers actual damages. *See Gulf States,* 79 S.W.3d at 567; *Haden,* 222 S.W.3d at 597. Ordinarily, attorneys' fees are not recoverable as actual damages in and of themselves. *See Haden,* 222 S.W.3d at 597 (citing *Tana Oil & Gas Corp. v. McCall,* 104 S.W.3d 80, 81–82 (Tex.2003) (attorneys, who sought to recover damages based solely on value of time and costs incurred in defending claims, affirmatively precluded themselves of any recovery)) & n. 14 (discussing exceptions to the rule, i.e., when a party must sue third party because of defendant's tort and when defendant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons).

### B. Application of the Law to the Facts

■■■■ In its first amended counterclaims, Rent–A–Center asserted fraud, fraudulent inducement, and false representation claims against Worldwide Asset, and claimed it was it was "entitled to actual and exemplary damages." Worldwide Asset sought no-evidence summary judgment on Rent–A–Center's counterclaims, in

both consumers and future third-party debt purchasers, and additional discovery will

demonstrate the exact nature of such damages."

part, because there was no evidence to support the element of damages for any of those counterclaims. In its response, Rent–A–Center claimed only that it was "damaged by the commencement of this litigation in that it has had to retain and compensate attorneys to defend this action."

It is clear from the record and Rent–A–Center's contentions on appeal, attorneys' fees are the sole damages claimed by Rent–A–Center for its fraud, fraudulent inducement, and false representation counterclaims. We conclude attorneys' fees incurred to defend against the Worldwide Purchasers' lawsuit are not recoverable as actual damages on Rent–A–Center's counterclaims. *See Haden,* 222 S.W.3d at 597. Rent–A–Center did not plead a different basis for damages or respond with evidence of another basis for its damages as to its fraud, fraudulent inducement, and false representation counterclaims. Accordingly, we conclude the trial court did not err when it granted Worldwide Asset's motion for summary judgment on Rent–A–Center's counterclaims for fraud, fraudulent inducement, and false representation.

Cross-issue four is decided against Rent–A–Center.

## VIII. RENT–A–CENTER'S COUNTERCLAIM FOR INDEMNIFICATION

In cross-issue five, Rent–A–Center argues the trial court erred when it granted Worldwide Asset's motion for no-evidence summary judgment on its indemnification counterclaim because there was sufficient evidence Rent–A–Center was entitled to indemnification under the contract. Rent–A–Center claims it produced evidence that Worldwide Asset breached the contract so, pursuant to section 10.1, Worldwide Asset was required to indemnify Rent–A–Center from any and all losses or damages as a result of the breach. Worldwide Asset responds that "[b]ecause summary judgment should be affirmed against Rent–A–Center's breach of contract [counter]claims, the summary judgment against the indemnification ... claims likewise should be affirmed."

Section 10.1 of the contract provides:

Section 10.1. ***Buyer's Indemnification.*** From and after the Transfer Date, [Worldwide Asset] and its assignees shall defend, indemnify and hold harmless [Rent–A–Center] or [Rent–A–Center's] agents, affiliates, employees, contractors, officers, directors and representatives against and from any and all liability for, and from and against **any and all losses or damages** [Rent–A–Center] may suffer as a result of any Claim or threatened Claim that [Rent–A–Center] shall incur or suffer as a result of: (i) any act or omission of [Worldwide Asset] or [Worldwide Asset's] agents, affiliates, employees, contractors, officers, assignees, directors and representatives in connection with the Assets, including the servicing thereof, and [Worldwide Asset's] purchase of the Assets, pursuant to the Agreement; (ii) **the breach or inaccuracy of any of [Worldwide Asset's] representations or warranties** as set forth in this Agreement and in the other documents executed in connection with the bid and the sale of the Assets or in the Registration and Certification Statement; (iii) the breach of any of [Worldwide Asset's] covenants as set forth in this Agreement and in the other documents executed in connection with [Worldwide Asset's] purchase of the Assets or in the Registration and Certification Statement; or (iv) Any Claim or threatened Claim by any Obligor regarding any subsequent assignment, enforcement, collection, servicing or administration of the Assets by

[Worldwide Asset] or [Worldwide Asset's] agents, affiliates, employees, contractors, officers, directors, assignees, and representatives, except as set forth in Section 10.2(iv).

(Emphasis added).

In its first amended counterclaims, Rent–A–Center asserted a claim for indemnification. Rent–A–Center claimed Worldwide Asset's breaches of articles VII, IX, and XVI of the contract,[5] as discussed above respecting Rent–A–Center's breach of contract counterclaims, constituted a breach of section 10.1. According to Rent–A–Center, Worldwide Asset is required to indemnify Rent–A–Center for "any and all losses or damages" respecting "all claims made by all parties to this litigation."

Worldwide Asset moved for no-evidence summary judgment on Rent–A–Center's indemnification counterclaim. It argued:

> Rent–A–Center requests indemnification based on Worldwide [Asset's] filing this lawsuit and its alleged breaches of contract. As previously stated, there is no evidence to support Rent–A–Center's breach of contract [counter]claims. Moreover, Rent–A–Center has provided no evidence that it is entitled to indemnification under the Contract. Accordingly, Rent–A–Center's request for indemnification should be dismissed.

In its response, Rent–A–Center argued "Worldwide [Asset's] allegation that there is no evidence to support [Rent–A–Center's] breach of contract [counter]claim [sic] is negated by the summary judgment evidence supporting [Rent–A–Center's] breach of contract [counter]claims, discussed *supra*." Rent–A–Center claimed Worldwide Asset agreed to indemnify Rent–A–Center from "any and all losses or damages" Rent–A–Center may suffer as a result of "the breach or inaccuracy of any of [Worldwide Asset's] representations or warranties." Then, Rent–A–Center argued its summary judgement evidence raised a genuine issue of material fact that Worldwide Asset breached its representations and warranties in section 9.1 and article XVI.

In its response to Worldwide Asset's motion for no-evidence summary judgment, Rent–A–Center did not address or point to any summary judgment evidence relating to the "losses or damages" it argues Worldwide Asset should indemnify. Rent–A–Center did point to the summary judgment evidence offered in support of its breach of contract counterclaims. However, we have already concluded the trial court did not err when it granted Worldwide Asset's motion for no-evidence summary judgment on Rent–A–Center's breach of contract counterclaims because there was no evidence to support the element of damages and Rent–A–Center did not challenge that ground supporting summary judgment on appeal. Further, in its first amended counterclaims for breach of contract, Rent–A–Center alleged it was "damaged, including damages as a result of having to retain attorneys to defend and prosecute this action, and in all likelihood will continue to sustain significant foreseeable damages." Section 10.1 of the contract does not mention attorneys' fees, nor does Rent–A–Center claim attorneys' fees fit within the "losses or damages" language of that section. Attorneys' fees incurred to defend against the Worldwide Purchasers' lawsuit are not recoverable as actual damages on Rent–A–Center's counterclaims. *See Haden*, 222 S.W.3d at 597.

---

**5.** In its breach of contract counterclaims, Rent–A–Center also argued Worldwide Asset breached article VI. However, Rent–A–Center does not argue its counterclaim for indemnification is supported by the alleged breach of article VI.

Accordingly, we conclude the trial court did not err when it granted Worldwide Asset's motion for no-evidence summary judgment on Rent–A–Center's indemnification counterclaim.

Cross-issue five is decided against Rent–a–Center. Based on our resolution of cross-issues two through five, we need not address Rent–A–Center's remaining issues on cross-appeal.

## IX.  CONCLUSION

The trial court did not err when it granted Rent–A–Center's motion for summary judgment dismissing the Worldwide Purchasers' claims.

Also, the trial court did not err when it granted Worldwide Asset's motion for summary judgment dismissing Rent–A–Center's counterclaims.

The trial court's final judgment is affirmed.