**Gary Ben STEPHENS, Stephens Group, L.P., and Stephens Group, II, L.P., Appellants,**

v.

**Kourosh HEMYARI, Union Valley Ranch, L.P., Appellees.**

No. 05–08–01492–CV.

Court of Appeals of Texas, Dallas.

April 20, 2010.

Craig T. Enoch, Alex S. Valdes, Winstead Sechrest & Minick, P.C., Austin, TX, for Appellants.

Donald Colleluori, Figari Davenport & Graves, L.L.P., Richard Illmer, Chad Andrew Johnson, Brown McCarroll, L.L.P., Leonard A. Epstein, Newman, Davenport & Epstein, P.C., Dallas, TX, for Appellees.

Before Justices O'NEILL, LANG, and MYERS.

## MEMORANDUM OPINION

Opinion By Justice O'NEILL.

This is the second appeal of this case. Appellants Gary Ben Stephens, Stephens Group, L.P., and Stephens Group, II, L.P., appeal a summary judgment granted in favor of appellees Kourosh Hemayari and Union Valley Ranch declaring appellees owners in fee simple to certain tracks of real property. In five issues, appellants generally contend the trial court erred in granting appellees' motion for summary judgment because the foreclosure sale on which their title is based is void. For the following reasons, we reverse the trial court's judgment and render judgment that the foreclosure sale was void.

This case concerns title to three tracts of land in Dallas County. Stephens Group, L.P and Stephens Group, II, L.P. purchased the tracts of land in the mid 1990s. Stephens was the general partner for the Stephens Groups, and James Murphy was a limited partner. Murphy subsequently filed for bankruptcy and, following an adversary proceeding between Stephens, the Stephens Groups and Murphy, a settlement agreement was reached. Pursuant to that agreement, Stephens would purchase Murphy's interest in the partnerships. The agreement required Stephens to pay Murphy $50,000 at closing and additional $700,000 within 120 days of closing. Stephens signed a nonrecourse note for the $700,000 payment secured by a deed of trust and a deed in lieu of foreclosure on the three tracts of land. The agreement provided that if Stephens did not make the $700,000 payment, Murphy could foreclose on the deed of trust or record the deed in lieu of foreclosure.

Stephens made the initial $50,000 payment, but did not make the $700,000 payment as required by the agreement. When Murphy threatened foreclosure, the Stephens Groups filed for Chapter 11 bankruptcy protection, thus putting into effect the automatic bankruptcy stay. 11 U.S.C. § 362. Murphy moved to lift the automatic stay. The bankruptcy court modified the automatic stay to permit the property be sold in foreclosure under specified circumstances. The specific terms of the bankruptcy court's order were dis-

cussed in the prior appeal. *See Stephens v. Hemyari,* 216 S.W.3d 526, 529 (Tex. App.-Dallas 2007, pet. denied.). As we explained in that opinion, under the bankruptcy court's order, Stephens had to pay $50,000 by noon on June 12, 2000 and $650,000 on or before August 1, 2000. *Id.* at 527. The order specifically permitted Murphy to post the property for foreclosure before the second payment was due so that the foreclosure sale could be conducted on August 1, 2000 if Stephens did not pay the $650,000 on or before that date. Murphy did not post the property for foreclosure in July as contemplated by the bankruptcy court's order. Instead, only after Stephens failed to make the $700,000 payment, was the property posted for foreclosure. Hemyari purchased it at a foreclosure sale on September 5, 2000.

The issue presented in the prior appeal was whether Hemyari showed conclusively that the September 5, 2000 sale was valid. *See Stephens v. Hemyari,* 216 S.W.3d 526 (Tex.App.-Dallas 2007, pet. ref'd). We concluded he did not and reversed the trial court's summary judgment. We explained the trial court "conditionally lifted the stay to allow foreclosure on a specific date" and that "strictly construing the order does not permit us to interpret it as allowing foreclosure after August 1, 2000." *See Stephens,* 216 S.W.3d at 529. Therefore, we concluded Hemyari failed to show conclusively the validity of the foreclosure sale. We did not reach whether the converse was true-specifically, whether the sale was void, because that issue was not before us in the summary judgment proceedings. We remanded to the trial court.

Meanwhile, appellee Union Valley purchased a portion of the subject property from Hemyari and filed a petition in intervention in the trial court. Hemyari and Union Valley then filed motions for summary judgment again asserting the bankruptcy court's order did not require the foreclosure sale to occur on August 1, 2000 and that the sale was valid as a matter of law. They also moved for summary judgment claiming appellants lacked standing to contest the sale and on various defenses, including equitable estoppel, judicial estoppel, laches, waiver, and ratification.

Appellants replied and also filed their own motion for summary judgment asserting the foreclosure sale was void as a matter of law because it did not occur on August 1, 2000 as required by the bankruptcy court's order. It relied on the bankruptcy court's order and our prior opinion interpreting that order. They also asserted the foreclosure sale was invalid based on various alleged defects in the foreclosure documents. They sought a judgment setting aside the foreclosure sale and cancelling the substitute trustee's deed of trust.

The trial court again concluded that the foreclosure sale did not have to occur on August 1, 2000. It also concluded various alleged defects in the foreclosure documents did not render the sale void. The trial court granted appellees' motions and concluded the sale was valid as a matter of law. The trial court denied Stephens and the Stephens Groups' motions. This appeal followed. On appeal, appellants assert the trial court erred in granting appellees' motion and denying their motion because the foreclosure sale was void as a matter of law. They maintain the bankruptcy court's order did not permit foreclosure on a date other than August 1, 2000 and therefore the sale after that date violated the automatic stay. We agree.

The standard for reviewing a summary judgment is well-established. The movant has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Diversicare Gen.*

*Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex.2005); *Stephens,* 216 S.W.3d at 528. When both parties move for summary judgment, an appellate court reviews the summary judgment evidence presented by both parties to determine all questions presented. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Worldwide Asset Purchasing, LLC v. Rent–A–Center East, Inc.,* 290 S.W.3d 554, 560 (Tex.App.-Dallas 2009, no pet.). When both parties file motions for summary judgment, the appellate court considers whether either party's motion for summary judgment should have been granted. *See Howard v. INA County Mut. Ins. Co.,* 933 S.W.2d 212, 216 (Tex.App.-Dallas 1996, writ denied).

▮ As stated in our prior opinion, an action taken in violation of the automatic stay is void, not merely voidable. *Stephens,* 216 S.W.3d at 529 (quoting *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988)). As a consequence, a foreclosure sale that occurs during the automatic stay passes no title unless the automatic stay has been lifted or modified to permit the sale. *See Stephens,* 216 S.W.3d at 529. The terms of an order modifying the automatic stay must be strictly construed. *Id.*

In the prior appeal, applying these principals to the bankruptcy court's order, we concluded the bankruptcy court's order modifying the stay required the foreclosure sale to occur on August 1, 2000 and did not allow for a sale after that date. Thus, we concluded Hemyari failed to conclusively establish the September sale was valid. Relying on a footnote, appellees nevertheless assert we did not hold the foreclosure sale violated the automatic stay. As explained in our footnote, however, we did not reach that issue because it was not before us at that time. *See Stephens,* 216 S.W.3d at 529. Our prior opinion did clearly state the trial court "conditionally lifted the stay to allow foreclosure on a specific date" and that "strictly construing the order does not permit us to interpret it as allowing foreclosure after August 1, 2000." *See Stephens v. Hemyari,* 216 S.W.3d 526, 529 (Tex.App.-Dallas 2007, pet. denied). This was a legal determination based on the same bankruptcy court order we now have before us.

The "law of the case" doctrine is "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Loram Maint., Inc. v. Ianni,* 210 S.W.3d 593, 596 (Tex.2006). Under this doctrine, a court of appeals will ordinarily be bound by its initial decision if there is a subsequent appeal in the case. *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex.2003). "By narrowing the issues in the successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision, judicial economy, and efficiency." *Id.* It is based on public policy and is aimed at bringing finality to litigation. *Id.* A decision rendered on an issue by an appellate court does not, however, absolutely bar reconsideration of the issue on a second appeal. *Id.* The application of the doctrine lies within the discretion of the court, depending on the circumstances of the case. *Id.* It is an exception to the law of the case doctrine that the original decision was clearly erroneous. *Id.*

▮ In the prior case, we construed the order as requiring the foreclosure sale to occur on August 1, 2000. That legal conclusion was necessary to the disposition of the appeal and we cannot conclude that the opinion was clearly erroneous. To the contrary, we believe the clear language of the order unambiguously modified the stay to allow for a sale only on August 1, 2000. We cannot agree with appellees contention

that the bankruptcy court could not have intended this result. According to appellees, the order could not have permitted an August 1, 2000 sale because it allowed Stephens to make the final payment at any time on August 1, 2000, but the property code requires a foreclosure sale to occur between 10:00 a.m. and 4 p.m.

The plain language of the order expressly authorized a sale on August 1, 2000 if payment was not received by that date.[1] The Texas Property Code requires all foreclosure sales to occur between 10 a.m. and 4 p.m. on the first Tuesday of the month. Further, a notice for a foreclosure sale must give the date and time of the sale. That notice, had it been given, would have stated the time of the sale. *See* Tex. Prop.Code Ann. § 51.002. If appellants wanted to avoid the sale, they were required to pay the balance on or before that time. While it would have been preferable for the bankruptcy court's order itself to have given the parties a specific time on August 1, 2000 in which to make the $650,000.00 payment, we cannot agree that that flaw allows us to ignore the plain language of the order. Appellees' also direct us to other extrinsic evidence to show the bankruptcy court did not intend the sale to occur only on August 1, 2000. However, the bankruptcy court's order is not ambiguous. When an order is not ambiguous, we enforce it literally. *Reiss v. Reiss*, 118 S.W.3d 439, 441–42 (Tex.2003) (holding that unambiguous decree must be enforced literally, without consideration of matters extrinsic to the decree); *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex.2000) (refusing to consider extrinsic evidence when judgment unambiguous).

██ Appellees next contend, based on various post-sale events, that appellants are barred by equitable estoppel, judicial estoppel, laches, waiver, and ratification from complaining of the foreclosure sale. Appellees raise various arguments that we might find persuasive if violations of the automatic stay were merely voidable. However, a sale in violation of the automatic stay is void, of no effect and does not pass title. *See Stephens*, 216 S.W.3d at 529. Therefore, with one exception discussed below, no post-sale events could then validate the sale.

The one post-event act that could validate a foreclosure sale is an act by the bankruptcy court itself. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992). Under section 362(d) of the bankruptcy code, a bankruptcy court can validate acts which would otherwise have been void if it retroactively grants relief from the automatic stay. *See In re Schwartz*, 954 F.2d at 573 (section 362(d) gives the court the power to ratify retroactively any violation of the automatic stay which would otherwise be void); *Davies v. Commissioner of Internal Revenue*, 68 F.3d 1129, 1130 (9th Cir.1995) (a bankruptcy court may retroactively ratify an action that would have been voided by the stay). The question then is whether the bankruptcy court retroactively annulled the stay to validate the void sale. Appellees acknowledge the bankruptcy court did not expressly grant retroactive relief, but assert the bankruptcy court impliedly did so when it dismissed the bankruptcy case. They rely on *Lawson v. Gibbs*, 591 S.W.2d 292, 295 (Tex.Civ.App.-Houston [1st. Dist.] 1979, writ ref'd n.r.e.).

In *Lawson*, the First Court of Appeals concluded that a bankruptcy court order

---

1. If appellants are correct and the order gave Stephens until midnight on August 1, 2000 an August 1, 2000 foreclosure sale would have been impossible. However, the order plainly contemplates an August 1, 2000 sale and appellees acknowledge—in other portions of their brief—that the bankruptcy court intended to permit a sale on that date.

that specifically approved distribution of proceeds from a foreclosure sale was sufficient to retroactively validate the foreclosure sale. *Id.* According to appellees, *Lawson* stands for the proposition that a state court can imply the bankruptcy court modified or annulled the automatic stay. However, it seems somewhat inconsistent to strictly construe orders modifying the automatic stay, yet allow a retroactive annulment of the stay to be implied. Regardless, to the extent a bankruptcy court can impliedly annul the automatic stay, we conclude, at a minimum, any act that impliedly annuls the stay must refer to the action that violated the stay. Here, appellees direct us to no act by the bankruptcy court that specifically referenced the foreclosure sale. Instead, the bankruptcy court granted the debtor's motion to dismiss after ensuring certain vendors had been paid. This court has expressly held that a dismissal of a bankruptcy case does not validate acts taken in violation of the stay. *See Huddleston v. Tex. Commerce Bank–Dallas, N.A.,* 756 S.W.2d 343, 345 (Tex.App.-Dallas 1988, writ denied). Here, although the bankruptcy court was told a foreclosure sale had occurred, neither the motion to dismiss nor the order of dismissal specifically referenced the foreclosure sale. The bankruptcy court's order did not otherwise in any way approve the foreclosure sale. We conclude the bankruptcy court's order dismissing the bankruptcy case did not validate the foreclosure sale.

█ Because the foreclosure sale was in violation of the automatic stay, the sale was void, of no effect, and passed no title. *See Stephens,* 216 S.W.3d at 529. Unless the bankruptcy court orders otherwise, dismissal of a bankruptcy case revests property in the entity in which the property was vested immediately before the commencement of the case. 11 U.S.C.

349(b)(3). *Huddleston,* 756 S.W.2d at 346. In particular, the estate's assets will revest in the debtor when the case is dismissed. *Id.* There is one important caveat that appellees attempt to invoke. Specifically, the estate's assets will revest in the debtor only if the debtor disclosed the assets to the bankruptcy court in his bankruptcy schedules. *Kilpatrick v. Kilpatrick,* 205 S.W.3d 690, 702 (Tex.App.-Fort Worth 2006, pet. denied); *Kunica v. St. Jean Financial, Inc.,* 233 B.R. 46, 53–55 (S.D.N.Y.1999). Appellees argue the Stephens Groups did not schedule the property at issue here because they did not inform the bankruptcy court of a claim for wrongful foreclosure. However, the Stephens Groups did schedule all three tracts of land, the property over which title is at issue in this case. Thus, that property became property of the estate when the Stephens Groups filed for bankruptcy. Because the property was not disposed of during the bankruptcy, when the bankruptcy was dismissed, title reverted back to its prepetition status, i.e., back to the Stephens Groups.

We conclude the trial court should have granted appellants' motion for summary judgment. We reverse the trial court's summary judgment and render judgment cancelling the substitute trustee's September 5, 2000 deed and sale. Because of our disposition of this appeal, the parties agree we must remand to the trial court to consider Hemyari's claim for equitable subrogation.