COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



TIAZMARA SOTELO,


 Appellant,


v.


INTERSTATE FINANCIAL
CORPORATION,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00363-CV
 


Appeal from the


County Court at Law No. 5


of El Paso County, Texas 


(TC# 2003-2318)


O P I N I O N


 Appellant Tiazmara Sotelo appeals from a summary judgment granted in favor of Appellee
Interstate Financial Corporation on claims for usury and wrongful foreclosure. For the reasons that
follow, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

 Tiazmara Sotelo (Appellant will be referred to herein as "Sotelo") signed a promissory note
in favor of Interstate Financial Corporation (Appellee will be referred to herein as "IFC") in the
amount of $240,000 on February 11, 2000 (the Note). (1) To secure the Note, Sotelo also executed a
Deed of Trust giving IFC a lien on real property located at 14003 Montana Avenue (this property
will be referred to as the "Montana property") in El Paso. (2) In early 2003, IFC began foreclosure
proceedings on the Montana property, claiming that Sotelo was three months in default. IFC sold
the Montana property by trustee sale on March 4, 2003.

 Sotelo filed this suit on June 4, 2003, alleging wrongful foreclosure. On March 17, 2004,
Sotelo filed her first amended petition, in which she raised, for the first time, a usury claim. (3) Sotelo
alleged that IFC had coerced her into repurchasing the Montana property to serve as collateral for
the Note and that the majority of the funds were to pay off her father's pre-existing business debt
with IFC, a debt on which she was not obligated. She argued that, because she had been forced to
assume a third party's debt as condition of getting the loan, the amount of the assumed debt was
interest, which rendered the Note usurious. (4) Sotelo asserted two grounds for her wrongful
foreclosure claims. She alleged that her obligation under the Note was paid in full, as payments had
been made in excess of her individual obligation, according to IFC's release. In the alternative, she
alleged that IFC had forfeited all principal amounts, because the Note was usurious and there was
therefore no lien upon which to foreclose.

 On January 10, 2005, the trial court abated the case to allow Sotelo to send IFC notice of her
usury claim, pursuant to section 305.006(b) of the Texas Finance Code. Two days later, Sotelo's
counsel sent IFC her statutory notice. Pursuant to section 305.006(c), IFC's counsel sent Sotelo a
reply on February 16, 2005, releasing her from all obligation under the note, except for $17,400.15
of principal, which she acknowledged to be her individual obligation. IFC also released Sotelo
individually from any further obligation on the note, as payments had already been made in excess
of $17,400.15. (5)

 On May 23, 2005, IFC moved for summary judgment on both traditional and no-evidence
grounds. See Tex. R. Civ. P. 166a(c) and (i). In support of its traditional motion, IFC argued, in
part, that it had corrected any usury violation by releasing and discharging Sotelo's liability on the
Note. In its no-evidence motion, IFC argued, in part, that there was no evidence of either of the
elements necessary to establish wrongful foreclosure. The trial court granted summary judgment on
both Sotelo's usury and wrongful foreclosure causes of action on August 22, 2005. Sotelo appeals.

DISCUSSION

 In two issues, Sotelo argues that the trial court improperly granted IFC's motion for summary
judgment on her usury and wrongful foreclosure claims. (6) When the trial court's order granting
summary judgment does not state the specific ground or grounds relied upon for its ruling, as in this
case, summary judgment will be affirmed on appeal if any of the theories advanced is meritorious. 
Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).

 The standard of review for a traditional summary judgment asks whether the movant carried
the burden of showing that there is no genuine issue of material fact, so that judgment should be
granted as a matter of law. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex.
2005); De Santiago v. West Tex. Cmty. Supervision & Corrs. Dep't, 203 S.W.3d 387, 398 (Tex.
App.--El Paso 2006, no pet.). Summary judgment is proper if the defendant disproves at least one
element of each of the plaintiff's causes of action, D. Houston, Inc. v. Love, 92 S.W.3d 450, 454
(Tex. 2002), or establishes all elements of an affirmative defense to each claim. Shah v. Moss, 67
S.W.3d 836, 842 (Tex. 2001). Once the movant establishes a right to judgment as a matter of law,
the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact. City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979).

 When reviewing a summary judgment, we take as true all competent evidence favorable to
the nonmovant, and we indulge every reasonable inference and resolve any doubts in the
nonmovant's favor. Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002) (citing
Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).

 The Texas Rules of Civil Procedure permit a party to move for a no-evidence summary
judgment "without presenting summary judgment evidence," and they require the moving party to
"state the elements as to which there is no evidence." Tex. R. Civ. P. 166a(i). A no-evidence motion
for summary judgment is essentially a pretrial directed verdict, and we apply the same legal
sufficiency standard of review. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). 
The party moving for a no-evidence summary judgment must specifically state the elements as to
which there is allegedly no evidence. See Tex. R. Civ. P. 166a(i); Aguilar v. Morales, 162 S.W.3d
825, 834 (Tex. App.--El Paso 2005, pet. denied). The burden then shifts to the nonmovant to
produce summary judgment evidence raising a genuine issue of material fact regarding each element
challenged in the motion. Aguilar, 162 S.W.3d at 834. We view the evidence in the light most
favorable to the nonmovant, and we must disregard all contrary evidence and inferences. King
Ranch, 118 S.W.3d at 751. A genuine issue of material fact is raised if the nonmovant produces
more than a scintilla of evidence regarding the challenged element. Id. There is not a scintilla of
evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of
material fact. Ianni v. Loram Maint. of Way, Inc., 16 S.W.3d 508, 513 (Tex. App.--El Paso 2000,
pet. denied). Evidence that fails to constitute more than a mere scintilla is, in legal effect, no
evidence at all. Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001).

 In its traditional motion for summary judgment, IFC asserted its defense under section
305.006(c) of the Texas Finance Code, stating that it had corrected any usury violation by releasing
Sotelo from individual liability on the note. Sotelo responds that summary judgment was not proper
on this ground, because IFC's correction was not timely under Finance Code section 305.103.

 Section 305.103 states:

 (a) A creditor is not liable to an obligor for a violation of this subtitle
if:

 (1) not later than the 60th day after the date the creditor
actually discovered the violation, the creditor corrects the violation as
to that obligor by taking any necessary action and making any
necessary adjustment, including the payment of interest on a refund,
if any, at the applicable rate provided for in the contract of the parties;
and

 (2) the creditor gives written notice to the obligor of the
violation before the obligor gives written notice of the violation or
files an action alleging the violation.


 (b) For the purposes of Subsection (a), a violation is actually
discovered at the time of the discovery of the violation in fact and not
at the time when an ordinarily prudent person, through reasonable
diligence, could or should have discovered or known of the violation. 
. . . .


Tex. Fin. Code Ann. § 305.103.


 Sotelo argues that IFC had actual knowledge of the usury on March 17, 2004, when she filed
her first amended petition, but that it did not give her notice of its intent to correct until December
22, 2004, more than nine months later.

 In response, IFC argues there is an alternative method for a creditor to correct a violation. 
Sections 305.006(b) and (c) of the Finance Code provide the following procedure for a creditor to
correct a usury violation and avoid liability:

 (b) Not later than the 61st day before the date an obligor files a suit seeking
penalties for a transaction in which a creditor has contracted for, charged, or received
usurious interest, the obligor shall give the creditor written notice stating in
reasonable detail the nature and amount of the violation.


 (c) A creditor who receives a notice under this section may correct the
violation as provided by Section 305.103 during the period beginning on the date the
notice is received and ending on the 60th day after that date. A creditor who corrects
a violation as provided by this section is not liable to an obligor for the violation.


Tex. Fin. Code Ann. § 305.006(b) and (c). Section 305.006 therefore requires, as a precondition
to filing a usury claim, that the obligor "shall give the creditor written notice stating in reasonable
detail the nature and amount of the violation."

 Our primary goal when construing a statute is to ascertain and give effect to the Legislature's
intent. Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002). We begin by
construing statutes as written and, if possible, ascertain intent from the statutory language. Id. We
may also consider other factors such as the object the statute seeks to obtain, legislative history, and
the consequences of a particular action. Id.; see also Tex. Gov't Code Ann. § 311.023. In
addition, we must always consider a statute as a whole and attempt to give effect to all of its
provisions. Marcus Cable Assocs., L.P., 90 S.W.3d at 706; see also Tex. Gov't Code Ann.
§ 311.021.

 When we apply these principles of statutory construction, IFC's February 16, 2005,
correction letter was effective under section 305.006. By the plain language of the statute, a creditor
has sixty days, "beginning on the date the notice is received," in which to effect a correction. Tex.
Fin. Code Ann. § 305.006(c). It is also our opinion that the Legislature's goal in enacting these
provisions was to encourage creditors to amend usurious contracts in the borrower's favor. In a case
where the creditor unilaterally discovers that a promissory note is usurious, the correction can be
made under section 305.103. See Tex. Fin. Code Ann. § 305.103. In a case where the borrower
discovers the excessive interest and intends to file suit, the creditor can correct under section 305.006
after the borrower sends the required notice and before he files suit. See Tex. Fin. Code Ann.
§ 305.006(b) and (c).

 We are unpersuaded by Sotelo's argument that, since IFC acquired "actual knowledge" of
her contentions regarding the usury cause of action at the time she filed her first amended petition,
the correction letters were therefore untimely under section 305.103. This argument ignores the
Legislature's apparent intention in section 305.006 to provide an alternative "safe harbor" method
for correction before the debtor files suit.

 Sotelo did not send IFC notice of her usury claim before she filed her first amended petition.
Neither party has challenged the trial court's abatement of the case to allow Sotelo to comply with
the statutory notice requirement. Once that notice was served on IFC's counsel, the plain language
of the statute gave the creditor a short window in which to correct the problem. (7)

 Were we to construe the statute as Sotelo argues, we would render section 305.006(c)
ineffective, because a debtor could deprive the creditor of his window of correction by simply
ignoring the mandatory requirement (8) contained in section 305.006(b). If a claimant can maintain an
action by abating the case and sending the required notice after the suit has been filed, we see no
reason why the abatement and subsequent notice should not also give the creditor an opportunity to
use section 305.006(c) to correct the violation. This gives effect to both provisions and does not
allow a usury claimant to rob a creditor of its section 305.006 correction method by failing to comply
with the statute.

 The summary judgment record shows that IFC made its correction under section 305.006 on
February 16, 2005, which was less than sixty days after Sotelo sent her notice under section 
305.006(b). Since neither party contends that IFC breached the usury statutes after it sent its
February 12 correction letter, IFC proved its statutory defense to usury. See Tex. Fin. Code Ann.
§ 305.006(c). The trial court did not err by granting summary judgment on Sotelo's usury claim.

 As one of its no-evidence grounds for summary judgment, IFC argues there was no evidence
of either of the elements of Sotelo's wrongful foreclosure cause of action. The elements of wrongful
foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate
price. Forestier v. San Antonio Sav. Ass'n, 564 S.W.2d 160, 165 (Tex. Civ. App.--El Paso 1978,
writ ref'd n.r.e.) (citing American. Sav. & Loan Ass'n v. Musick, 531 S.W.2d 581, 587 (Tex. 1975)).

 Rule 166a(i) states that "The court must grant the motion unless the respondent produces
summary judgment evidence raising a genuine issue of material fact." Tex. R. Civ. P. 166a(i). The
only evidence Sotelo produced in response to IFC's motion was her own affidavit. The document
itself does not make reference to her wrongful foreclosure claim, and she does not argue in her
summary judgment response or her brief that it raises a fact issue on that cause of action. Since
Sotelo did not produce any evidence of a fact issue on her claim for wrongful foreclosure, the trial
court properly granted summary judgment on that claim.

 Having determined there were lawful grounds for summary judgment on each of Appellant's
claims, we overrule both of them and affirm the judgment of the trial court.


 For the reasons stated above, we affirm the trial court's judgment.


 KENNETH R. CARR, Justice


April 19, 2007


Before Chew, C.J., McClure, and Carr, JJ.

1. Sotelo's mother and brother also signed the Note, but they are not involved in this litigation.
2. The proceeds of the Note were, in part, to allow Sotelo to repurchase the Montana property. Sotelo originally
purchased the property in 1997, but had transferred it to a third party in November of 1999.
3. Sotelo's usury claim was, therefore, first raised more than four years after she signed the Note. IFC urges that
Sotelo's usury claim is barred by the statute of limitations, which provides that a suit for usury "must be brought within
four years after the date on which the usurious interest was contracted for, charged, or received." Tex. Fin. Code Ann.
§ 305.006(a). Because of our disposition of this case, we find it unnecessary to address IFC's statute of limitations
defense.
4. Sotelo argues that the note was usurious under the theory of Alamo Lumber Co. v. Gold, 661 S.W.2d 926
(Tex. 1983). In Alamo Lumber, the court held that a lender who requires a borrower to assume a third party's debt as
a condition to making a loan, as distinguished from requiring that the borrower pay another of her own debts, must
include the amount of the third party's debt in the interest computation. Id. at 928. Because of our disposition of this
case, we also find it unnecessary to address Sotelo's argument that the Note was usurious under Alamo Lumber.
5. IFC's letter stated, in pertinent part:


 This letter is sent in response to your letter of January 12, 2005. You sent that letter as your
client's notice pursuant to § 305.006(b), Tex. Finance Code, regarding the promissory note executed
by your client, dated February 11, 2000, in the original principal amount of $240,000.00 (the "Note"). 
As I understand your letter, your contention . . . is that the principal amount of the Note, from your
client's viewpoint, was only $17,400.15, and all other amounts contained in the $240,000.00 face
amount of the Note were interest as to your client . . . .




 Under § 305.006(c), Tex. Finance Code, a creditor who receives a notice under § 305.006(b) "may
correct" an alleged usury within sixty (60) days after receipt of such notice. If the creditor does so,
under § 305.006(c) the creditor is not liable to the obligor for the alleged violation. In order to correct
even the most remote possibility that this transaction might be viewed as usurious to your client,
Interstate Financial Corporation does hereby release and discharge Tiazmara Sotelo from personal
liability for payment of any amount which might be characterized as interest (usurious or not) due from
her under the Note, and specifically releases and discharges her from any obligation to pay any amount
under the Note other than the $17,400.15 you acknowledged to be principal in your letter. Because
of the payments credited against the Note, this means that your client has no further liability under the
Note.


 Interstate Financial Corporation does not release or discharge any other obligor from liability
under the Note; it does not reduce, release, or discharge the amount of indebtedness owed by any other
obligor under the Note; and it does not waive, release, or discharge any collateral or security for the
Note. 
6. Issue One: "The trial court erred in granting Appellee's motion for summary judgment that there was no
evidence of the exaction of greater compensation than allowed by law and that such did not constitute an irregularity in
the foreclosure."

 Issue Two: "The trial court erred in granting Appellee's motion for summary judgment that Appellant's claim
for usury was barred by limitations or had been corrected and the trustee's sale was valid as a matter of law."
7. The Texas usury statutes impose often draconian penalties upon those creditors who violate them. See, e.g.,
Tex. Fin. Code Ann. § 305.002 (creditor who charges and receives interest that is greater than twice the lawful amount
forfeits, inter alia, the principal amount of the loan, as well as the interest and all other amounts charged and received). 
Presumably, the Legislature's purpose behind such penalties was not to award unwarranted "windfalls" to fortuitous
debtors or to unfairly penalize well-intentioned creditors for careless or unknowing mistakes (cf. Tex. Fin. Code Ann.
§ 305.101 ("A creditor is not subject to penalty under this chapter for any usurious interest that results from an accidental
and bona fide error.")), but rather to dissuade unscrupulous creditors from charging usurious rates in the first instance. 
We believe that our construction of the relevant statutes effectuates this goal.
8. "[T]he obligor shall give the creditor written notice" before filing suit (emphasis added).