R. Michael LAGOW and Brenda S. Lagow, Appellants

v.

Nancy B. HAMON, by and Through her Agent and Attorney–In–Fact, John L. ROACH, Appellee.

No. 05–10–01499–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 2012.

Robert H. Renneker, Law Office of Renneker Robert, Dallas, TX, for Appellants.

Donovan Campbell, Jr., James McCord Wilson, Rader & Campbell, Jr., James Patrick Bredehoft, Thompson & Knight LLP, Dallas, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion By Justice LANG.

In this case generally involving promissory notes and a usury claim, R. Michael Lagow and Brenda S. Lagow appeal the trial court's final judgment in favor of Nancy B. Hamon, by and through her Agent and Attorney–in–Fact, John L. Roach, finding Michael and Brenda Lagow jointly and severally liable for damages in the amount of $467,701.37 and Michael Lagow severally liable for damages in the amount of $1,459,640.95. The Lagows raise four issues on appeal that argue the trial court erred when it: (1) granted Hamon's plea in abatement pursuant to Texas Finance Code section 305.006(b)-(d), which

allowed Hamon to correct the usury violation alleged in Brenda Lagow's counterclaim; (2) granted Hamon's motions for traditional and no-evidence summary judgment on her claims, and Brenda Lagow's affirmative defenses and counterclaim for usury; (3) denied Brenda Lagow's motion for traditional summary judgment on her counterclaim for usury; and (4) ordered the attorney's fees awarded to Brenda Lagow based on Hamon's correction of the alleged usury counterclaim was to be offset against the amount she owed in damages.

We conclude the trial court did not err when it granted Hamon's plea in abatement. Also, we conclude the trial court did not err when it granted Hamon's motions for summary judgment and denied Brenda Lagow's motion for traditional summary judgment on Brenda Lagow's counterclaim for usury. Finally, we conclude the trial court did not err when it ordered the attorney's fees awarded to Brenda Lagow based on Hamon's correction of the alleged usury counterclaim was to be offset against the amount she owed in damages. The trial court's final judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hamon sued Michael and Brenda Lagow alleging claims for payment of promissory notes, breach of contract, money had and received, unjust enrichment, and restitution. In addition, Hamon sought a declaratory judgment, an accounting, punitive and exemplary damages, and attorney's fees. Michael and Brenda Lagow answered the lawsuit and generally denied the claims. In addition, Brenda Lagow asserted the affirmative defenses of failure of consideration and usury, and asserted a counterclaim for usury and attorney's fees. Brenda Lagow's affirmative defense of usury claimed the promissory notes were unenforceable or, in the alternative, Hamon was required to "forfeit all principal and interest charged." Her counterclaim for usury sought the penalty of three times the amount of the excess interest charged and forfeiture of the principal of the note, and all interest and other amounts charged and received by Hamon.

Hamon answered Brenda Lagow's counterclaim, generally denying the allegation, and requested an abatement that would allow her to correct any alleged usury violation as permitted by section 305.006 of the Texas Finance Code. TEX. FIN. CODE ANN. § 305.006 (West 2006). On the same day, Hamon filed two motions for summary judgment. Hamon sought partial, traditional summary judgment on her claims on the notes, breach of contract, and attorney's fees. She also sought traditional and no-evidence summary judgment on Brenda Lagow's affirmative defenses and counterclaim. Michael and Brenda Lagow responded to Hamon's motions for summary judgment, and Brenda Lagow sought traditional summary judgment on her counterclaim for usury.

While the motions for summary judgment were pending, the trial court granted Hamon's plea in abatement. During the abatement, Hamon sent Brenda Lagow a usury correction letter, a partial release, and offered to pay her reasonable attorney's fees in accordance with section 305.006 of the Texas Finance Code. Hamon filed a copy of that letter with the trial court. In addition, Hamon filed supplemental motions for traditional and no-evidence summary judgment and a supplemental response to Brenda Lagow's motion for traditional summary judgment on her counterclaim for usury, asserting Hamon had corrected or cured any alleged violation.

The trial court granted Hamon's motions for partial, traditional summary judg-

ment and no-evidence summary judgment, and denied Brenda Lagow's motion for traditional summary judgment on her counterclaim for usury. Hamon filed a notice of nonsuit for her remaining claims and the trial court signed an order of nonsuit. Then, the trial court signed a final judgment, which incorporated its rulings on the motions for summary judgment, awarded Hamon damages against Michael and Brenda Lagow, jointly and severally, in the amount of $467,701.37 and in "several liability" against Michael Lagow in the amount of $1,459,640.95. The trial court also awarded Hamon $10,000 in attorney's fees. Finally, the trial court awarded Brenda Lagow $14,700 in attorney's fees respecting the correction or cure of the usury counterclaim pursuant to section 305.006(d) of the Texas Finance Code, which the trial court ordered "shall be" offset against the damages for which Brenda Lagow was found liable to Hamon.

## II. ABATEMENT

In issue one, Brenda Lagow[1] argues the trial court erred when it granted Hamon's plea in abatement pursuant to Texas Finance Code section 305.006(b)-(d), which allowed Hamon to correct the usury violation alleged in Brenda Lagow's counterclaim. She argues Hamon waived her right to correct the alleged usury by failing to exercise that right in a timely fashion. Also, she contends that Hamon's motion for continuance and the granting of that motion constituted a de facto abatement because it occurred after Brenda Lagow filed her counterclaim for usury and before Hamon filed her plea in abatement. Further, Brenda Lagow claims that "[b]y filing and prosecuting traditional and no-evidence motions for summary judgment—

---

1. Although Michael and Brenda Lagow filed a joint brief asserting the issues jointly, only Brenda Lagow filed a counterclaim for usury.

acts inconsistent with abatement—Hamon waived any right to abate th[e] case to purge the transaction of usury." Hamon responds that her plea in abatement was timely and filing her motions for summary judgment was not an act inconsistent with her plea in abatement.

### A. Standard of Review

An appellate court reviews a trial court's action in granting or denying a plea in abatement using an abuse of discretion standard. *See Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex.1988); *Lee v. GST Transp. Sys., L.P.,* 334 S.W.3d 16, 18 (Tex.App.-Dallas 2008, pet. denied). The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Lee,* 334 S.W.3d at 18.

### B. Applicable Law

Section 305.006(d) of the Texas Finance Code provides that when a debtor files a counterclaim alleging usurious interest in an original action by the creditor, the debtor shall provide notice at the time of filing the counterclaim and, on application of the creditor to the trial court, the action is subject to abatement for a period of sixty days. TEX. FIN. CODE ANN. § 305.006(d) (West 2006). During the abatement period, the creditor may correct a violation. TEX. FIN. CODE ANN. § 305.006(d). A creditor who corrects a violation is not liable to the debtor for the violation, but must offer to pay the obligor's reasonable attorney's fees incurred "with regard to the alleged violation before the abatement." TEX. FIN. CODE ANN. § 305.006(d).

Accordingly, as to the issues relating to her usury counterclaim, we will address the arguments as being raised by Brenda Lagow.

"Usury statutes are penal in nature and, as a result, they must be strictly construed in such a way as to give the lender the benefit of the doubt." *See Bair Chase Prop. Co., L.L.C. v. S & K Dev. Co., Inc.,* 260 S.W.3d 133, 142 (Tex.App.-Austin 2008, pet. denied) (quoting *First State Bank v. Dorst,* 843 S.W.2d 790, 794 (Tex. App.-Austin 1992, writ denied)) (discussing the failure of section 305.006(d) to provide guidance on how creditor may correct alleged usury violation); *see also Steves Sash & Door Co., Inc. v. Ceco Corp.,* 751 S.W.2d 473, 476 (Tex.1988) (citing *Home Sav. Ass'n of Dallas County v. Crow,* 514 S.W.2d 160 (Tex.Civ.App.-Dallas 1974), *affirmed,* 522 S.W.2d 457 (Tex.1975)). The Texas usury statutes impose often draconian penalties on those creditors who violate them. *Sotelo v. Interstate Fin. Corp.,* 224 S.W.3d 517, 522 n. 7 (Tex.App.-El Paso 2007, no pet.); *see also In re Weaver,* No. 04–14279–FRM, 2007 WL 3046593, *4 (Bankr.W.D.Tex. Oct. 16, 2007). Presumably, the legislature's purpose behind such penalties was not to award unwarranted "windfalls" to fortuitous debtors or to unfairly penalize well-intentioned creditors for careless or unknowing mistakes, but to dissuade unscrupulous creditors from charging usurious rates in the first instance. *Sotelo,* 224 S.W.3d at 522 n. 7; *see also In re Weaver,* 2007 WL 3046593, at *4. By enacting the provisions that allow creditors to correct a violation, the legislature has encouraged creditors to amend usurious contracts in the debtor's favor. *See Bair Chase,* 260 S.W.3d at 144; *Sotelo,* 224 S.W.3d at 522.

### C. Application of the Law to the Facts

Brenda Lagow contends that section 305.006 of the Texas Finance Code has a similar abatement provision as the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). *Compare* TEX. FIN. CODE ANN. § 305.006 *with* TEX. BUS. & COM. CODE ANN. § 17.505 (West 2011). As a result, she claims this Court should follow the Texas Supreme Court's ruling in *Hines v. Hash,* which required a defendant in a DTPA case to "request abatement with the filing of an answer or very soon thereafter" and conclude that Hamon waived her right to an abatement to correct the alleged usury violation because she did not seek abatement until she filed her motions for summary judgment. *See Hines v. Hash,* 843 S.W.2d 464, 469 (Tex. 1992). We disagree.

When construing a statute, a reviewing court should determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Sotelo,* 224 S.W.3d at 522; *Jones v. State,* 175 S.W.3d 927, 930 (Tex.App.-Dallas 2005, no pet.). If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999); *Jones,* 175 S.W.3d at 930; *see also Allen,* 15 S.W.3d at 527; *In re BACALA,* 982 S.W.2d 371, 380 (Tex.1998).

If a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. *Fitzgerald,* 996 S.W.2d at 866; *Jones,* 175 S.W.3d at 930; *accord Burlington N.R.R. Co. v. Okla. Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404, (1987); *see Allen,* 15 S.W.3d at 527. When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (West 2005); *see Jones,* 175 S.W.3d at 930. If words are not defined, they are given their plain and

common meaning, unless the context of the statute indicates a contrary intention or it leads to an absurd result. *See City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008); *see also In re BACALA,* 982 S.W.2d at 380 (discussing interpretation of civil statutes).

■■■ Generally, a plea in abatement must be raised in a timely manner, or it is waived. *Wyatt v. Shaw,* 760 S.W.2d 245, 248 (Tex.1988) (discussing abatement of lawsuit due to pendency of prior suit). However, unlike the DTPA that requires a plea in abatement be filed at the time the suit is answered or very "soon thereafter," the plain language of section 305.006(d), which addresses usury violations alleged in a counterclaim, is silent as to any time by which a creditor must seek an abatement to correct a violation of the usury law alleged in a counterclaim. *Compare* TEX. FIN. CODE ANN. § 305.006(d) *with* TEX. BUS. & COM. CODE ANN. § 17.505 *and Hines,* 843 S.W.2d at 469. Further, unlike the DTPA, the usury statutes are considered penal in nature. *See Bair Chase,* 260 S.W.3d at 142 (usury statutes penal in nature). In contrast, in *Pennington v. Singleton,* the Texas Supreme Court rejected the argument that section 17.50 of the DTPA, the section providing the violations giving rise to a cause of action, was penal in nature and subject to the constitutionality requirements of penal statutes. *Pennington v. Singleton,* 606 S.W.2d 682, 690–91 (Tex. 1980); *see also* Timothy Patton, *Case Law Under the Texas Deceptive Trade Practices–Consumer Protection Act,* 33 Baylor L. Rev. 533, 538 (Summer, 1981). Because the usury statutes are penal in nature, we must strictly construe section 305.006(d) in such a way as to give Hamon the benefit of the doubt. *See Bair Chase,* 260 S.W.3d at 142 ("[U]sury statutes are penal in nature and, as a result, they must be strictly construed in such a way as to give the

lender the benefit of doubt."). In addition, by enacting the provisions that allow creditors to correct a violation, the legislature has encouraged creditors to amend usurious contracts in the borrower's favor. *See Sotelo,* 224 S.W.3d at 522; *see also Bair Chase,* 260 S.W.3d at 144. We conclude that requiring Hamon to request abatement with the filing of an answer or very soon thereafter, like in a DTPA action, is inconsistent with the legislature's purpose as expressed in section 305.006(d) of the Texas Finance Code and as interpreted by the case law.

■■■ Second, Brenda Lagow claims that Hamon's motion for continuance and the granting of that motion constituted a de facto abatement. She claims the following language in Hamon's motion for continuance implicitly notes the need for an abatement and acknowledges Hamon's right to cure the usury counterclaim:

> In addition, more time is needed for all parties to pursue settlement negotiations and mediation. Some initial settlement inquiries have been made between the parties, but the present trial setting does not allow for significant, substantive settlement negotiations and any potential mediation. While it is premature to anticipate whether full settlement could be reached, even if partial settlement can be accomplished in the near future, any necessary trial could be significantly streamlined. Additional time is necessary to devote to such settlement-mediation efforts, as opposed to consuming that time in trial-preparation activities.

The record also shows that in her motion for continuance, Hamon expressly stated she needed the continuance "to complete document and deposition discovery, especially with respect to recently [pleaded] claims and defenses of [ ] Brenda S. Lagow," and prayed that the trial court

"continue the trial setting in this case and reset same for sometime in January–March 2010 or another date convenient to the Court in the first quarter of 2010."

■ Generally, a plea in abatement challenges the plaintiff's pleading by asserting that facts outside the pleadings prevent the suit from going forward until the problem can be cured. *See Brown v. Bowers*, No. 05–07–00136–CV, 2008 WL 2152889, \*2 (Tex.App.-Dallas May 22, 2008, no pet.) (mem. op.); *KSNG Architects, Inc. v. Beasley*, 109 S.W.3d 894, 898 (Tex.App.-Dallas 2003, no pet.). A plea in abatement addresses a defect in the pleading that requires evidence outside of the pleading. *See KSNG Architects*, 109 S.W.3d at 898.

Hamon's motion for continuance was not in the nature of a plea in abatement. It did not identify a problem with the suit, reference section 305.006 of the Texas Finance Code, seek an opportunity to correct the alleged usury violation, or try to prevent the counterclaim from going forward. Instead, Hamon's motion for continuance sought to reset the trial to a later date so that she would have additional time to conduct discovery. We conclude that Hamon's motion for continuance was not a de facto plea in abatement, nor did it waive Hamon's right to correct the alleged usury counterclaim.

■ Finally, Brenda Lagow contends that when Hamon filed her motion for partial, traditional summary judgment on her claims and traditional and no-evidence summary judgment on Brenda Lagow's affirmative defense and counterclaim for usury contemporaneously with her plea in abatement, Hamon waived her right to abate and correct the alleged violation because her actions were inconsistent with the remedy of abatement. She bases this contention on the principle that a summary judgment is a trial on the merits. Hamon responds that there is no evidence supporting that she intended to waive her right to abatement when she contemporaneously filed her motions for summary judgment with her plea in abatement. Also, Hamon claims she was entitled to pursue independent grounds for summary judgment relief without any need for an abatement. She maintains that her motions for summary judgment address more than Brenda Lagow's counterclaim and since Michael Lagow did not raise a usury affirmative defense or counterclaim she was free to pursue her claims against him.

■ "Generally, 'waiver' is the intentional relinquishment of a right actually or constructively known, or intentional conduct inconsistent with claiming that right." *Perry Homes v. Cull*, 258 S.W.3d 580, 602 (Tex.2008). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual or constructive knowledge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right." *Perry Homes*, 258 S.W.3d at 602–03. The failure to file a plea in abatement before proceeding to trial constitutes a waiver thereof. *See Farnsworth v. Massey*, 365 S.W.2d 1, 4 (Tex.1963) (no plea in abatement filed and parties proceeded to trial on merits).

The record shows that Hamon's initial plea in abatement and motions for summary judgment were filed contemporaneously. They do not state they were filed in the alternative. However, at the beginning of the hearing on Hamon's plea in abatement, and Hamon's and Brenda Lagow's motions for summary judgment, Hamon's counsel stated, "contingent on how the [trial] court rules on the plea in abatement, we also have a regular MSJ filed by [Hamon], a no-evidence MSJ by [Hamon], and then an MSJ filed by [Brenda La-

gow]." There is nothing in the record indicating Hamon's intention to waive her plea in abatement. We conclude that Hamon did not waive her plea in abatement when she contemporaneously filed her motions for summary judgment.

For the reasons stated, we conclude the trial court did not err when it granted Hamon's plea in abatement. Issue one is decided against Brenda Lagow.

## III. ORDER GRANTING HAMON'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING BRENDA LAGOW'S MOTION FOR SUMMARY JUDGMENT

■ In issues two and three,[2] Michael and Brenda Lagow argue the trial court erred when it granted Hamon's motions for summary judgment and denied Brenda Lagow's motion for summary judgment. The Lagows address issues two and three together. We do likewise. The argument and analysis in the Lagows' brief on appeal as to both issues address only the alleged merits of Brenda Lagow's usury counterclaim.[3] Brenda Lagow does not contest the adequacy of the correction of the alleged usury. Further, she states, "[b]ut for the abatement of this case and Hamon's belated attempt to [correct], [she] would have prevailed on her motion for [ ] summary judgment [on her usury counterclaim]."

The key proposition in Hamon's first supplemental response to Brenda Lagow's motion for summary judgment, and her first supplements to her motions for traditional and no-evidence summary judgment

was the fact that she, Hamon, had timely corrected the alleged usury violation and, as a result, Brenda Lagow's usury counterclaim could not be maintained as provided by section 305.006(d) of the Texas Finance Code. *See* TEX. FIN. CODE ANN. § 305.006(d) ("A creditor who corrects a violation as provided by this section is not liable to an obligor for the violation."). Brenda does not address that point on appeal.

■ When more than one ground is asserted in a motion for summary judgment and the trial court does not specify the grounds on which it rendered summary judgment, an appellant must challenge each ground asserted. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970); *Worldwide Asset Purchasing, LLC v. Rent–A–Center E., Inc.*, 290 S.W.3d 554, 569 (Tex.App.-Dallas 2009, no pet.). If an appellant fails to challenge one of the grounds for summary judgment, an appellate court may affirm the summary judgment on that ground alone. *See Worldwide Asset*, 290 S.W.3d at 569.

We must conclude the trial court did not err when it granted Hamon's motions for summary judgement and denied Brenda Lagow's motion for summary judgment on the usury counterclaim in favor of Hamon because Brenda Lagow does not challenge every possible ground for the trial court's summary judgment. *See Malooly*, 461 S.W.2d at 121; *Worldwide Asset*, 290 S.W.3d at 569.

Issues two and three are decided against Michael and Brenda Lagow.

---

**2.** In the "Issued Presented" section, the Lagows list the argument we now address as issue "2." However, in the argument section, they refer to this as issues "2" and "3."

**3.** Although the Lagows raise a general issue that the trial court erred when it granted Hamon's motions for traditional and no-evi-

dence summary judgment, they provide no argument as to Hamon's claims against Michael and Brenda Lagow for suit on the notes and breach of contract, or Brenda Lagow's affirmative defenses of failure of consideration and usury.

## V. ATTORNEY'S FEES

██ In issue four,[4] Brenda Lagow argues the trial court erred when it ordered the attorney's fees awarded to Brenda Lagow based on Hamon's correction or cure of the alleged usury counterclaim was to be offset against the amount she owed in damages. She claims the trial court's order effectively negates the limited protection offered to a debtor under section 305.006(d) of the Texas Finance Code. Also, she contends that because she was found jointly and severally liable with Michael Lagow, if he were to pay the judgment, she would never actually recover the attorney's fees. Further, she contends that section 305.006 is analogous to the attorney's fees a party may be required to pay for setting aside a default judgment and "is the price that a litigant must pay in certain cases for the privilege of presenting her case." Hamon responds that Brenda Lagow cites no authority to support her contentions, there is no case law addressing the propriety of such an offset, and Brenda Lagow is "arguing attenuated, improbable future hypothetical examples."

### A. Standard of Review

██ Generally, an appellate court reviews a trial court's decision to award attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex.1998); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 152–53 (Tex.App.-Dallas 2012, no pet.). The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

### B. Applicable Law to the Facts

██ Section 305.006(d) of the Texas Finance Code provides "As part of the cor-

rection of the violation, the creditor shall offer to pay the obligor's reasonable attorney's fees as determined by the court based on the hours reasonably expended by the obligor's counsel with regard to the alleged violation before the abatement." TEX. FIN. CODE ANN. § 305.006(d). The failure of the creditor to offer to pay the obligor's attorney's fees results in a failure to comply with the post-suit correction provisions of section 305.006(d). *Walker & Assocs. Surveying Inc. v. Roberts*, 306 S.W.3d 839, 853 (Tex.App.-Texarkana 2010, no pet.).

### C. Application of the Law to the Facts

The record shows that in her correction letter, Hamon expressly offered to pay Brenda Lagow's attorney's fees. The correction letter states, "pursuant to T[exas] F[inance] C[ode] § 305.006(d), [Hamon] hereby offers to pay Brenda's (but not Michael's) reasonable attorney's fees as (and to be) determined by the Court herein based on said attorney's hours reasonably expended with respect to such alleged usury violation before the abatement referenced in the Order." In the trial court's final judgment, it noted that with regard to Brenda Lagow's usury counterclaim, "[Hamon] has now formally offered to pay [Brenda Lagow's] said attorney's fees on four occasions."

Brenda Lagow cites no authority to support her claim that the trial court erred when it ordered the attorney's fees awarded to her on her usury counterclaim be offset against the amount she was adjudged liable to Hamon in damages. Accordingly, we construe the statute to see if it prohibits the trial court from doing so.

When construing a statute, a reviewing court should determine and give effect to

---

4. In the "Issued Presented" section, the Lagows identify this as "3." However, in the argument section, they refer to this as issue "4."

the legislature's intent. *See Allen*, 15 S.W.3d at 527; *Sotelo*, 224 S.W.3d at 522; *Jones*, 175 S.W.3d at 930. If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See Fitzgerald*, 996 S.W.2d at 865–66; *Jones*, 175 S.W.3d at 930; *see also Allen*, 15 S.W.3d at 527; *In re BACALA*, 982 S.W.2d at 380.

There is nothing in the plain language of section 305.006(d) of the Texas Finance Code that directs how payment of the attorney's fees should be made. Further, Brenda Lagow has not supplied any authorities to support her assertion. Instead, that section directs only that the creditor "offer to pay the obligor's attorney's fees." Tex. Fin. Code Ann. § 305.006(d). Accordingly, we conclude the trial court did not err when it ordered the attorney's fees, which Brenda Lagow was entitled to recover when Hamon corrected the alleged usury counterclaim, to be offset against the amount she owed in damages.

Issue four is decided against Brenda Lagow.

## VI. CONCLUSION

The trial court did not err when it granted Hamon's plea in abatement. Also, the trial court did not err when it granted Hamon's motions for traditional and no-evidence summary judgment and denied Brenda Lagow's motion for traditional summary judgment on Brenda Lagow's counterclaim for usury. Finally, the trial court did not err when it ordered the attorney's fees, which Brenda Lagow was entitled to recover when Hamon corrected the alleged usury counterclaim, to be offset against the amount she owed in damages.

The trial court's final judgment is affirmed.