**VACATE and DISMISS and Opinion Filed June 4, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-01039-CV

## TERRANCE HARRIS AND DEBORAH HARRIS, Appellants
## V.
## RICH WILLIS CONSTRUCTION LLC, Appellee

**On Appeal from the County Court at Law No. 4
Dallas County, Texas
Trial Court Cause No. CC-21-04281-D**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Goldstein

Appellants Terrance and Deborah Harris[1] appeal from a judgment awarding possession in a forcible-detainer action. The trial court awarded possession of the property to appellee Rich Willis Construction, LLC (RWCL). In one issue, the Harrises challenge the jurisdiction of the County Court at Law to hear the case and contend that title is so intertwined with possession that one may not be resolved without the other. Because we conclude that title and possession are inextricably

---

[1] Because appellants share a surname, they will collectively be referred to as the Harrises, or, where relevant, by their first names Terrance or Deborah.

intertwined, we vacate the county court's judgment and dismiss the case for lack of jurisdiction.

## I.  BACKGROUND

The property in question is a single-family home in Dallas County. The Harrises have lived at the property for 27 years. The property had belonged to Deborah's aunt Clara Watson Gillespie. Prior to the Harrises' occupancy of the property, Gillespie made an alleged promise to the Harrises that they could live there for their entire lives.

The record presents no clear chain of title through deed conveyance. On October 3, 1989, George Whitaker transferred the subject property via warranty deed to Gillespie.[2] Gillespie later died intestate, and, according to RWCL, title to the property passed to her son Gregory Watson.[3] At some point prior to her passing, the Harrises assert, Gillespie verbally promised that they could live at the property for the rest of their lives. Thereafter, the record establishes the subsequent conveyances as follows:

> June 26, 2019: Gregory Watson purported to convey property[4] via two separate Quitclaim Deeds: one from Gregory Watson to Ruth Watson and the other from Gregory Watson, married and as Independent

---

[2] The deed records show that the transfer was to "Clara Watson." Deborah testified that Clara Watson and Clara Watson Gillespie were the same person.

[3] The record contains no documented title conveyance from Gillespie to Gregory Watson; however, as the appeal does not specifically challenge this conveyance, we do not address it.

[4] While only one property is at issue in this appeal, the record and evidence before the jury included multiple properties owned by Gillespie, where family members lived with similar understanding.

Executor of the Estate of Clara Watson, deceased, hereinafter Grantor to Grantees Ruth Watson and Ty Simmons Dorsey;

January 11, 2020 via Texas General Warranty Deed Ruth Watson and Ty Simmons Dorsey convey to Skyfox Realty Group, LLC (Ty Dorsey CEO);

July 7, 2021 via General Warranty Deed Skyfox Realty Group, LLC, Ruth Watson Managing Member conveys to Redwood Buyers, LLC

August 5, 2021: Redwood Buyers LLC to Richwills Construction LLC[5] via General Warranty Deed.

RWCL as the purported landlord gave the Harrises notice to vacate and initiated an action for forcible detainer.

A jury trial commenced on September 13, 2022. Immediately before trial, the Harrises argued that the trial court lacked jurisdiction, claiming the issue of title was intertwined with the issue of possession. The trial court stated that because a venire panel had already been called, in the interest of time, it would move forward with trial and would determine legal questions as they presented. The trial court acknowledged that a trespass to quiet title case had been filed in the district court.

At trial, RWCL called two witnesses who testified to chain of title and the use of a title company. The Harrises called six witnesses, including themselves. All of the Harrises' witnesses testified to the promise made by Gillespie to the Harrises. Two of the witnesses attested that during their time living at the property, the Harrises made renovations to most of the home.

---

[5] We note without further discussion that there are evident conflicts in the spelling of the RWCL in the record that may require resolution in the trial court.

Before closing arguments, RWCL moved for a directed verdict and made a plea to the jurisdiction on the sole issue of possession. The Harrises responded by again raising the jurisdictional issue. The Harrises' argument rested on Watson's knowledge of Gillespie's promise to the Harrises, which the trial court characterized as a life estate. The Harrises argued that Watson's conveyance of the property to his fourth wife was fraudulent. RWCL argued that the Harrises lacked standing to raise an issue of fraudulent transfer. The trial court ultimately denied the plea to the jurisdiction and motion for directed verdict, but also rejected the Harrises' jurisdictional argument, explaining:

> For this Court, this is a case of first impression where I have not an actual challenge of the title by someone who claims superior title, but rather, that promise to stay, and I don't know how that is the type of -- of case that the Court -- that the court of appeals have intended to have the county court at law stay or abate. I don't know that, just based on the facts presented, again, the plea to the jurisdiction is one that this Court would grant. So I think at this point, the court of appeals is in a better position to answer that question[.]

The jury returned a verdict in favor of RWCL, and the trial court entered judgment awarding possession of the property to RWCL. This appeal followed.

## II.    DISCUSSION

The Harrises' only issue on appeal is that title is so intertwined with possession that one may not be resolved without the other. The Harrises argue that the trial court lacked jurisdiction to render a judgment of possession and was required instead to abate this lawsuit until a district court could resolve issues of title.

–4–

## A. Standard of Review

The existence of subject-matter jurisdiction is a question of law, which we review de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

We review a trial court's denial of a plea in abatement for abuse of discretion. *Lagow v. Hamon*, 384 S.W.3d 411, 415 (Tex. App.—Dallas 2012, no pet.). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Id.* at 415.

## B. Analysis

A justice court in the precinct where the real property is located has jurisdiction of forcible-detainer suits. TEX. GOV'T CODE ANN. § 27.031(a)(2); TEX. PROP. CODE ANN. § 24.004(a). A forcible-detainer action determines which party has a superior right to immediate possession. *See Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.). The only issue heard in an action of forcible detainer is the right to actual possession; the merits of title shall not be adjudicated. TEX. R. CIV. P. 746; *see Rice*, 51 S.W.3d at 709.

To obtain possession, a plaintiff is not required to prove title, but must show sufficient evidence of ownership to establish superior right to immediate possession. *Rice*, 51 S.W.3d at 709. The mere existence of a title dispute does not deprive a justice court of subject matter jurisdiction. *Bruce v. Fed. Nat. Mortg. Ass'n*, 352 S.W.3d 891, 893 (Tex. App.—Dallas 2011, pet. denied). A title dispute divests a

–5–

lower court's jurisdiction only if the issue of title and possession are so intertwined that resolution of title is required to determine right of possession. *Id.* To defeat the court's jurisdiction, the defendant must provide "specific evidence" of a genuine title dispute that is intertwined with the issue of immediate possession. *Gutierrez v. Gonzalez*, No. 05-16-00631-CV, 2017 WL 2729901 at *2 (Tex. App.—Dallas June 26, 2017, pet. denied) (mem. op.) (quoting *Yarto v. Gilliland*, 287 S.W.3d 83, 93 (Tex. App.—Corpus Christi 2009, no pet.)). Specific evidence exists if a party asserts a basis for title ownership that is not patently ineffective under the law. *Id.*

The Harrises make two claims to establish a genuine title issue. First, they claim to have a life estate through a promise made by Gillespie. Second, they claim there was a fraudulent transfer from Watson to his wife. RWCL responds to the first point by arguing that the statute of frauds requires the transfer to be in writing and the evidence conclusively establishes that it was not. RWCL responds to the second point by arguing that the Harrises lacked standing to challenge Watson's transfer to his wife as fraudulent. Because we agree with the Harrises that there was sufficient evidence of a life estate to create a genuine title issue, we need not address their second argument.

A life estate grants an interest to an individual for the duration of their life. *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018). It is created when language in a deed or will "manifests an intention on the part of the grantor to pass to a grantee a right to possess, use, or enjoy property during the period of the grantee's life. *Id.*

–6–

"The life tenant owns the estate only for life, which is a lesser estate than the fee or inheritance which belongs to the remaindermen." *Tellez v. Rodriguez*, 612 S.W.3d 707, 710 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Mitchell v. Mitchell*, 235 S.W.2d 744, 746 (Tex. App.—Galveston 1950), *rev'd on other grounds*, 151 Tex. 1, 244 S.W.2d 803 (1951)). A life tenant and remainderman each hold the same land under separate titles. *Id.* However, "[a] life tenant is entitled to exclusive possession and control of the property comprising the life estate and the remaindermen are not entitled to possession thereof until the life estate terminates." *Id.* (quoting *Enserch Expl., Inc. v. Wimmer*, 718 S.W.2d 308, 310 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.)).

Although the statute of frauds ordinarily requires the grant of a life estate to be in writing, a parol gift of a life estate may be established if the donee proves: (1) a present gift by the donor; (2) possession under the gift, taken and held by the donee with the consent of the donor; and (3) permanent and valuable improvements made by the donee upon the property in reliance upon the gift with knowledge and consent of the donor. *Soltner v. Flores*, 335 S.W.2d 771, 772 (Tex. App.—El Paso 1960, no writ).

Six witnesses testified to Gillespie's oral promise to the Harrises. The basis of the promise is that they could live in the home for their entire lives. The Harrises lived there for thirty-five years and they paid taxes. The Harrises also put on evidence that they lived in the home during Gillespie's life and made substantial

–7–

permanent improvements to the property (kitchen, bedroom, and bathroom) while they lived there. Accordingly, the Harrises presented sufficient evidence of a life estate for the trial court to conclude that there were genuine issues of title intertwined with the issue of possession. *See Tellez*, 612 S.W.3d at 710 (evidence sufficient to show that residents were granted a life estate created genuine issues of title intertwined with possession in forcible detainer action).

Because the Harrises proffered sufficient evidence of a parol gift of a life estate to create a genuine title issue, the resolution of title is required to determine the right of possession. *See id.* Therefore, we sustain the Harrises' sole issue on appeal.

### III.   CONCLUSION

We conclude that the county court at law was divested of jurisdiction to hear this matter due to the inextricably intertwined issue of title and possession. We therefore vacate the judgment of possession and dismiss the case for lack of jurisdiction. TEX. R. APP. P. 43.2(e).[6]

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

221039F.P05

---

[6] RWCL raises an objection to documents filed with the Harrises' brief, as well as two paragraphs of the statement of facts in that brief, as they are not part of the record. Documents attached to a brief but not part of the record may not be considered by the appellate court. *In Interest of S.H.*, No. 05-17-00336-CV, 2018 WL 3751297 at *5 (Tex. App.—Dallas Aug. 8, 2018, no pet.). Because these documents, with the exception of deed number 2019000181485, were not part of the record, we cannot and did not consider them.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TERRANCE HARRIS AND
DEBORAH HARRIS, Appellants

No. 05-22-01039-CV     V.

RICH WILLIS CONSTRUCTION
LLC, Appellee

On Appeal from the County Court at
Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-21-04281-
D.
Opinion delivered by Justice
Goldstein. Justices Carlyle and
Breedlove participating.

In accordance with this Court's opinion of this date, the trial court's judgment is **VACATED**.

The case is **DISMISSED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered June 4, 2024